686 A.2d 1279

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Russell COX, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1995.

Decided Dec. 23, 1996.

Reargument Denied Feb. 18, 1997.

518

520

522

Bernard L. Siegel, Philadelphia, for Russell Cox.

Catherine Marshall, Norman Gross, Robert A. Graci, Attorney General's Office for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

Appellant, Russell Cox, was convicted by a jury of two counts of murder of the first degree,[1] of criminal conspiracy[2] and of possessing an instrument of crime,[3] and one count of rape.[4] At the conclusion of the penalty phase of appellant's trial, the jury returned a sentence of death for each of the two murder convictions. The present direct appeal ensued. We affirm.

The record reflects that appellant's conviction resulted from an incident that occurred on February 27, 1986, in which appellant and his accomplice, Percy Lee, brutally killed Evelyn Brown and her 17–year–old daughter, Tina, and appellant raped Tina. Lee knew the victims since he and his girlfriend and child had lived with Mrs. Brown and her four children for approximately one year before Mrs. Brown asked him to leave in early 1986. On February 26, 1986, appellant and Lee knocked on the front door of the Browns' apartment in the early evening hours and asked to use the telephone. Sonya Brown, one of Mrs. Brown's daughters, recognized Lee and, hearing two voices, knew that he was not alone. Ms. Brown refused to let Lee in.[5] Lee then repeatedly kicked and banged on the door for several minutes. He left a note: "All of you bitches, hit man Butter."

Appellant and Lee left but returned to the Browns' apartment in the early morning of the next day. At approximately 2:00 a.m., Denise Williams, a neighbor of the Browns, saw the two men standing outside the Browns' front door. Williams observed appellant conversing through the closed door and heard the voice of one of the female occupants of the apartment. She also saw Lee standing to the side with his back against the wall, outside the view of the peephole in the door.

**1.** 18 Pa.C.S. § 2502(a).

**2.** 18 Pa.S.C. § 903.

**3.** 18 Pa.S.C. § 907.

**4.** 18 Pa.S.C. § 3121.

**5.** Ms. Brown left later that evening for an all-night babysitting job.

Appellant persuaded the occupants to let him inside the apartment.

At approximately 3:30 a.m., appellant and Lee went to the apartment of a man named Samuel Gilbert, who lived in the same apartment building as the Browns. Gilbert had known Lee and his mother since Lee was a child. Lee had occasionally stayed with Gilbert after he was evicted from the Browns' apartment. Lee awoke Gilbert and told him "I did something bad" and admitted "I stabbed Evelyn." Lee then stuffed clothing into a plastic bag and told Gilbert he was going to his mother's house. Lee left Gilbert's apartment with appellant and both of them stayed together for a while at Lee's mother's home.

The police were called and arrived at the Browns' apartment at 8:40 a.m. They found the body of Evelyn Brown in one of the bedrooms of the apartment. Her hands and feet had been tied behind her back and she was in a kneeling position with her back against the bed. A pair of panties had been stuffed into her mouth. Her body had a total of forty-eight stab, knife and puncture wounds to the face, neck, chest, side and thigh. The wounds had been inflicted through the use of cutting instruments, such as knives and scissors, and with such force that a rib was broken and wounds were inches in length and depth.

In another bedroom, police found the body of Tina Brown. Tina Brown's hands were bound behind her back, and a cloth noose had been tied around her neck. She had been raped and then also stabbed to death with cutting instruments such as knives and scissors. Her body had a total of fifty-three puncture, stab and knife wounds to the head, neck, chest, abdomen, buttocks and thigh. The wounds had also been inflicted with great force.

Police discovered other physical evidence at the crime scene. A bar of blood-stained soap was recovered from a bathroom sink. There were also two playing cards, an ace and a jack, that were lying face up on a pillow next to the body of Evelyn Brown.

On the same day, Samuel Gilbert informed Philadelphia homicide detectives of Lee's admission. Lee was later arrested at his mother's home. A search warrant for the premises was executed and the police recovered two knives, a pair of scissors, and various items of clothing that were removed from Lee's person.[6]

Within a week, appellant gave two statements to the police about his involvement in the incident. On the first occasion, four days after the incident, appellant came to the police station voluntarily to give information. Even though appellant was not a suspect in the case, the police warned appellant of his *Miranda* rights, which he waived. Appellant then told Detective Bennett the following. Appellant had been present at the outside of the apartment earlier on the day when the killings occurred. He had observed someone else knocking on the door and departing when the knock was not answered. He later met the other person who showed appellant the two bloodied bodies and admitted that he had killed the victims. After giving this statement, appellant agreed to return soon to take a polygraph examination and departed for home.

On the second occasion, appellant voluntarily was transported by the police to the police station for the polygraph examination. After waiving his *Miranda* rights but before submitting to the examination, appellant told the polygraph examiner, Detective Davis, that he wanted to talk to Detectives Nachurski and Lory about the murders rather than to take the polygraph examination. Appellant then admitted he raped Tina Brown. At that moment, the detectives stopped him from making any further statements and gave him *Mi-*

6. Although it was not established that the knives and scissors were actually used in the commission of the killings, these instruments were consistent with the types of instruments used to inflict the wounds on the two victims. In addition, laboratory analysis of Lee's clothes confirmed that human blood was present on Lee's pants and sneakers; however, there was an insufficient quantity of blood to determine a blood type. Likewise, a blood type could not be ascertained from the soap obtained from the crime scene because the substances in the blood that would have allowed an identification had been destroyed by the soap.

*randa* warnings again. Appellant waived his rights and was placed under arrest.

Appellant then gave a statement confessing to the rape but denying involvement in the murders. The statement reflected that: both appellant and Lee had gone the evening before the incident to the apartment, had left and had returned; someone from the apartment let them in after appellant conversed through the peephole; Lee told appellant to help unstring a shoe lace from a shoe in order to bind one of the victims, which appellant did; after Lee bound and gagged Tina and removed most of her clothes, Lee told appellant to have sex with Tina, which appellant did; and, Lee stabbed both women many times with scissors and a knife, which appellant eyewitnessed.

Appellant was tried jointly with Lee before a jury and found guilty of two charges of murder of the first degree, criminal conspiracy and possessing an instrument of crime and one count of rape.[7] At the conclusion of the penalty phase, the jury found three aggravating circumstances and three mitigating circumstances. The aggravating circumstances were: the defendant committed a killing while in the perpetration of felony, 42 Pa.C.S. § 9711(d)(6); the offense was committed by means of torture, 42 Pa.C.S. § 9711(d)(8); and, the defendant had been convicted of another offense for which a sentence of life imprisonment or death could have been imposed, 42 Pa. C.S. § 9711(d)(10). The three mitigating circumstances were: the defendant had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); the age of the defendant at the time of the crime, 42 Pa.C.S. § 9711(e)(4); and other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8). The jury found that the aggravating circumstances outweighed the mitigating circumstances and returned a sentence of death for each of the two murder convictions.

7. Lee was convicted of two counts of murder of the first degree and possession of an instrument of crime and sentenced to death for each murder conviction. *Commonwealth v. Lee,* 541 Pa. 260, 662 A.2d 645 (1995).

The court imposed a sentence of death for each of the two convictions of first-degree murder, which sentences were to run consecutively. In addition, the court imposed sentences of ten to twenty years for rape, five to ten years for criminal conspiracy and two and one-half to five years for possessing an instrument of crime, all of which were to run concurrently with the death penalty imposed on appellant's first conviction for first-degree murder.

Post-verdict motions were filed by trial counsel; however, new counsel was appointed and supplemental motions alleging ineffective assistance of counsel were filed. All post-verdict motions were subsequently denied and this appeal followed.

■ Although appellant has not specifically challenged the sufficiency of the evidence supporting his two first-degree murder convictions, we have nonetheless independently reviewed the evidence pursuant to the standard established in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The applicable standard of review is whether, viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, a jury could find that every element of the crime exists beyond a reasonable doubt. *Commonwealth v. Bryant*, 524 Pa. 564, 567, 574 A.2d 590, 592 (1990). This standard is equally applicable in cases where the evidence is circumstantial rather than direct, provided that the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Murphy*, 540 Pa. 318, 324, 657 A.2d 927, 930 (1995).

■ To prove murder of the first degree, the Commonwealth must demonstrate that the defendant killed with a specific intent to kill. 18 Pa.C.S. § 2502. The Commonwealth must show that: 1) a human being has unlawfully been killed; 2) the defendant participated in the killing; and 3) the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell*, 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). Circumstantial evidence can itself be sufficient to prove any element or all of the elements of the crime

of criminal homicide. *Commonwealth v. Amato,* 449 Pa. 592, 595, 297 A.2d 462, 464 (1972).

■ An actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense. *Commonwealth v. Bradley,* 481 Pa. 223, 392 A.2d 688, *cert. denied,* 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979); 18 Pa.C.S. § 306. The guilt or innocence of one who aids or abets is not determined by the quantum of such person's advice or encouragement. *Commonwealth v. Pierce,* 437 Pa. 266, 263 A.2d 350, 351 (1970). If the aiding and abetting is rendered to induce or encourage another to commit the crime and actually has this effect, no more is required. *Id.*

■ The record reflects that the evidence is sufficient to support appellant's conviction of the two murders. Sonya Brown's testimony established that there were bad feelings between Lee and some members of the Brown family, that Lee was not welcome in the Browns' apartment, that she refused to let him in the evening before the victims were killed and that it was highly unlikely that Lee could gain entry into the Browns' apartment on his own initiative for any purpose.

The testimony of Williams and Gilbert place appellant and Lee together during the crucial time of the incident. Williams testified that both appellant and Lee were at the Browns' apartment very shortly before the homicides. She identified appellant as the decoy engaged in the ploy in front of the Browns' apartment to have the door of the apartment opened and further stated that Lee was at his side and outside of the view of the peephole. Gilbert's testimony established that appellant was with Lee very shortly after the incident and that Lee admitted to one of the killings in appellant's presence.

Appellant's statements established that appellant knew Lee well,[8] that appellant jointly with Lee gained entry to the

---

8. Appellant told the police that he knew Lee a long time as they were "like cousins" and were "raised together."

apartment by use of a ruse aimed at the ostensible purpose of using the telephone, that appellant helped to bind a victim, that appellant was an eyewitness to the killings and that appellant raped Tina Brown immediately before she was stabbed to death. Appellant also said that, while the men were in the apartment and shortly before the killings, appellant saw Lee take scissors and a knife from Lee's pocket. He also said that Lee tied and gagged each of the victims in separate bedrooms. Appellant said that he held a shoe for Lee to remove a shoelace that was used to bind one of the victims. Appellant also said that he eyewitnessed the two stabbings which became so bloody that he put his hands over his eyes.

On review of the record, the Commonwealth has demonstrated that Evelyn Brown and Tina Brown were unlawfully killed in an intentional, deliberate and premeditated manner and appellant participated in the killings as an accomplice. We therefore proceed to address appellant's allegations of trial error and trial counsel's ineffectiveness.

■ Appellant first argues that the trial court erred in its instructions to the jury at the guilt phase regarding the competence of a defendant to waive, in a knowing and intelligent manner, his Fifth and Sixth Amendment rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He claims the court erred when it briefly described eleven cases decided by this court on the issue of competency because such descriptions caused the instruction to be misleading, one-sided and inflammatory and effectively took away from the jury the right to determine the voluntariness of appellant's confession.

■ A trial court is under a duty to instruct a jury on the correct legal principles applicable to the facts presented at trial. *Commonwealth v. Tervalon,* 463 Pa. 581, 592, 345 A.2d 671, 678 (1975). The issue of the constitutional admissibility of a defendant's statement to the police is to be submitted to the jury for its resolution. *Commonwealth v. Motley,* 472 Pa. 421, 429, 372 A.2d 764, 768 (1977). No *per se* rule automatically

renders invalid a waiver of constitutional rights based on mental disease or deficiency. *Commonwealth v. Bracey*, 501 Pa. 356, 461 A.2d 775 (1983). Rather, the jury's determination of involuntariness is to be based on the totality of the circumstances which may include a defendant's mental age, low IQ, mental disease, limited education and general condition. *Commonwealth v. Chacko*, 500 Pa. 571, 582, 459 A.2d 311, 317 (1983).

The record reflects that appellant's motion to suppress his second statement was denied. At trial, the issue of whether the second statement was voluntary and knowing was presented to the jury by defense counsel who focused on appellant's lack of cognitive functioning, mental capacity and ability to read and understand. The trial court advised the jury that before it could consider the confession, it had to decide if it was voluntary and, if it found the confession to be involuntary, it could ignore the confession. The court also instructed the jury to determine the issue of voluntariness by applying the free-choice or coercion standard.

The court further advised the jury to consider whether appellant's statement was preceded by appellant's valid waiver of his *Miranda* rights. The court then instructed in detail regarding appellant's claim that his mental capacity caused an invalid waiver of his *Miranda* rights and, therein, briefly discussed the eleven relevant cases. Following a defense objection, the court carefully instructed the jury that it must determine the voluntariness of appellant's confession based on the evidence in appellant's case and the general legal principles previously articulated, and that the enumerated cases were illustrative only and did not bind the jury. Appellant's trial counsel expressly agreed that the court's supplemental instructions regarding the eleven cases were adequate to rectify any possible misunderstanding by the jury regarding the effect of those cases and sought no further relief.[9] Appellant has failed to demonstrate the claimed error.

9. Appellant does not claim ineffective assistance of counsel in this regard.

Appellant's second claim is that the trial court erred in refusing to suppress appellant's second statement following a midtrial suppression hearing because his second statement constituted poisoned fruit that had been tainted by his prior illegal arrest based on insufficient probable cause. A court has the discretion to hear a motion to suppress evidence during the actual trial based on an extreme sense of caution and in the interest of justice. *Commonwealth v. Pinno*, 433 Pa. 1, 5, 248 A.2d 26, 29 (1968). Probable cause to arrest depends on whether, at the moment the arrest is made, the totality of the circumstances within the arresting officer's knowledge regarding a particular situation would warrant a person of reasonable caution to believe that the accused had committed or was committing an offense. *Commonwealth v. Holcomb*, 508 Pa. 425, 442, 498 A.2d 833, 841 (1985), *cert. denied*, 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986). An admission by a defendant that he committed an offense establishes probable cause to arrest regardless of what a defendant previously said or did not say to the police. *Commonwealth v. Edmiston*, 535 Pa. 210, 229, 634 A.2d 1078, 1087 (1993).

Appellant argues that the trial court should have suppressed his second statement, which was given after his arrest by Detective Nachurski, because that arrest was poisoned by a prior illegal arrest by the polygraph examiner, Detective Davis. The issue arose mid-trial when Detective Nachurski testified, on cross-examination, that he arrested appellant based on appellant's admission to him that appellant raped Tina Brown and on appellant's statements to Detective Davis. A mid-trial suppression hearing was held out of the presence of the jury to determine if appellant had properly been under arrest at the time Detective Nachurski took the statement from him.[10]

The record reflects that appellant first implicated himself to Detective Davis who then conveyed the information to Detec-

---

10. Appellant did not claim at the pre-trial suppression hearing that his confession should have been suppressed because he was arrested without probable cause.

tive Nachurski. Before the polygraph pre-examination began, Detective Davis warned appellant of his *Miranda* rights which appellant waived. Detective Davis was conducting a pre-examination interview when appellant admitted for the first time that he eyewitnessed the Brown killings, thereby contradicting his statement made two days earlier to Detective Bennett. When Detective Davis asked appellant whether he raped Tina Brown, appellant did not respond except to ask to speak to the other detectives. Detective Davis immediately stopped the interview and informed Detectives Nachurski and Lory of appellant's request. Appellant interrupted this conversation and stated that he wanted to talk to Detective Nachurski, and that he was there, he did not do any stabbing but he did rape Tina Brown. Detective Nachurski immediately placed appellant under arrest and rewarned appellant of his Fifth and Sixth Amendment rights under *Miranda* and, thereafter, obtained the second statement.

On review of the record, until appellant admitted he raped Tina Brown, appellant was considered an information witness who had voluntarily and cooperatively come to the police station to provide the police with any knowledge he had concerning the killings of the Brown women. Until appellant admitted he raped Tina Brown, he was not advised he was under arrest and was not handcuffed or otherwise restrained. Detective Nachurski testified he arrested appellant based on his knowledge of appellant's first statement and his admission to the rape, as well as the statements of Williams, Gilbert and Davis. On review of the record, appellant has failed to demonstrate that the trial court erred as alleged.

 Appellant's third claim is the trial court erred when it overruled his objection to the prosecutor's penalty argument that, based on the evidence, appellant deserved the death penalty. Appellant claims that the prosecutor expressed his personal opinion so as to deprive him of a fair and impartial trial. Prosecutorial remarks challenging the prior remarks of defense counsel are proper. *Commonwealth v. D'Amato*, 514 Pa. 471, 497, 526 A.2d 300, 313 (1987). During the penalty phase, the prosecutor must be accorded reason-

able latitude in arguing his position to the jury and may employ oratorical flair in arguing in favor of the death penalty. *Commonwealth v. Basemore,* 525 Pa. 512, 528, 582 A.2d 861, 869 (1990), *cert. denied* 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992). To warrant reversal, a prosecutor's summation comments must be so inflammatory as to have caused the jury's sentencing verdict to be the product of passion, prejudice or other arbitrary factors. *Commonwealth v. Zettlemoyer, supra,* 500 Pa. at 53, 454 A.2d at 956–57. Where the court expressly exhorts the jury to decide the case dispassionately based on the evidence and the law, an improper prosecutorial penalty summation may not affect the sentence. *Commonwealth v. Beasley,* 524 Pa. 34, 39–40, 568 A.2d 1235, 1237 (1990).

The challenged prosecutorial statement was: "Russell Cox, you deserve to die." Appellant's defense counsel had previously argued in closing that "[t]he Assistant District Attorney, as is his duty, will ask you, I expect, to vote that he be killed." The court overruled an objection by defense counsel and, thereafter, cautioned the jury not to consider the remark as constituting an expression of personal opinion regarding punishment but a recommendation on behalf of the Commonwealth that the relevant evidence and law warranted death penalty verdicts. Appellant has failed to show that the court erred, particularly in light of its cautionary instruction.

■■■ Appellant's fourth allegation is that the court erroneously admitted six color photographs of the corpses of the victims during the penalty phase on the issue of the aggravating circumstance of torture under 42 Pa.C.S. § 9711(d)(8). Appellant argues that the photographs were inflammatory, prejudicial and irrelevant and, in any event, cumulative of other evidence.

■■■ Photographs of a murder victim are not *per se* inadmissible. *Commonwealth v. Lee,* 541 Pa. 260, 278, 662 A.2d 645, 654 (1995). It is the manner in which a corpse is displayed that may cause photographs to be emotionally charged. *Commonwealth v. Chester,* 526 Pa. 578, 591–92, 587

A.2d 1367, 1373–74 (1991), *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991). The admission of such photographs is a matter within the sound discretion of the trial judge and only an abuse of discretion will constitute reversible error. *Commonwealth v. Auker,* 545 Pa. 521, ——, 681 A.2d 1305, 1318 (1996)); *Commonwealth v. McCutchen,* 499 Pa. 597, 602, 454 A.2d 547, 549 (1982). Photographs of cuts and bruises on a victim's body are admissible at the penalty phase where the probative value of the vicious nature of the killing and the prosecutor's theory that the victim had been tortured outweigh any inflammatory effect. *Commonwealth v. Henry,* 524 Pa. 135, 569 A.2d 929 (1990), *cert. denied,* 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991).

The record reflects that the Commonwealth presented six color photographs of the victims during the penalty phase in order to prove beyond a reasonable doubt the aggravating circumstance of torture. These photographs were of the victims' prone bodies and had been taken at the medical examiner's office after the bodies had been thoroughly cleansed of all blood and debris and the gags and shackles had been removed. When the photographs were shown to the jury, the court cautioned the jury regarding the limited evidentiary value of the photographs and the need to avoid any emotional response to the photographs.

These were the first photographs seen by the jury that reflected the number, nature and location of the wounds sustained by each of the two victims. No photographs were used in the guilt phase of the trial. During the guilt phase, the wounds were indicated through the use of black-and-white sketches and the testimony of the medical examiner who placed stickers on two mannequins to show the location of the wounds.[11]

On review of the record, the court did not abuse its discretion when it allowed the photographs into evidence in the

11. Also, during the guilt phase, when the sketches were shown to the jurors, the court cautioned the jury to consider the sketches only to show the location of the wounds, designated by the red lines, and to avoid any emotional response.

penalty phase. These photographs were used to illustrate the nature and extent of the stabbing, slashing and puncture wounds which evidenced the intentional and heinous infliction of substantial pain, i.e., torture. The propriety of this is well established. *See Commonwealth v. McCutchen*, 499 Pa. at 602, 454 A.2d at 549. Further, appellant has failed to demonstrate that the court abused its discretion in determining that the need for the color photographs in the penalty phase outweighed the likelihood of inflaming the minds and passions of the jurors, particularly in light of the court's cautionary remarks. Finally, appellant fails to demonstrate that the pictures were cumulative because: these were the first photographs of the bodies seen by the jury; and, the forensic drawings and the mannequins used during the guilt phase constituted second-hand renderings of what had actually occurred respecting the heinous and vicious desecration of the bodies of the two victims.

Appellant's fifth claim is that the Commonwealth failed to prove the aggravating circumstance of torture beyond a reasonable doubt. He essentially contends that despite the number of wounds, there was no proof that the fatal wounds came after the nonfatal wounds and, thus, no proof that torture was committed. 42 Pa.C.S. § 9711(d)(8) states that an aggravating circumstance is a killing by means of torture. Torture is the intentional infliction of a considerable amount of pain and suffering on a victim which is unnecessarily heinous, atrocious or cruel manifesting exceptional depravity. *Commonwealth v. Thomas*, 522 Pa. 256, 277, 561 A.2d 699, 709 (1989). There must be an indication that the killer was not satisfied with the killing alone. *Commonwealth v. Edmiston, supra*, 535 Pa. at 236, 634 A.2d at 1091. Torture includes the infliction of intense pain to punish or coerce someone; it is torment or agony or anguish of body or mind. *Commonwealth v. Nelson*, 514 Pa. 262, 279, 523 A.2d 728, 737 (1987); *Commonwealth v. Auker, supra*.

The record reflects that the killings were accompanied by the circumstance of torture. The injuries to the vital and nonvital parts of the victims' bodies were numerous and were

caused by many slashing, cutting and puncture wounds to their heads, faces, necks and bodies. Both victims were tied up and gagged before the wounds were inflicted. Both victims suffered extensive and intense pain.[12] The evidence concerning the injuries to the vital parts of the victims' bodies plus the several dozen painful injuries to nonvital parts of their bodies was sufficient to establish that the killer was not satisfied with the killings alone and that the infliction of significant pain and suffering, i.e., torture, occurred during the homicidal processes. Appellant's claim fails.

Appellant's final series of claims allege that trial counsel provided ineffective assistance. When asserting claims of ineffective assistance of counsel, *Commonwealth v. Pierce*, 515 Pa. 153, 159–60, 527 A.2d 973, 975–76 (1987) and subsequent cases require a defendant to demonstrate: 1) the underlying claim is of arguable merit; 2) counsel's performance was unreasonable; and 3) counsel's ineffectiveness prejudiced defendant. Counsel can not be deemed ineffective for failing to anticipate a change in the law and to make decisions or raise claims based on future decisions. *Commonwealth v. Fahy*, 537 Pa. 533, 541–42, 645 A.2d 199, 203 (1994), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995).

Appellant first claims that trial counsel erred in declining to "life-qualify" two of the jurors. Life qualification occurs where counsel identifies and excludes those prospective

---

12. Dr. Hoyer, the assistant medical examiner, testified about the significant pain both victims suffered. He said that the victims were alive, conscious and experienced pain from the wounds to the nonvital parts of their bodies since those areas bore evidence of bleeding that reflected sustained heart beat, maintained blood flow and preserved pulse beat. Dr. Hoyer also testified that: both victims could have survived for at least five minutes after the infliction of the fatal wounds; the pain from the wounds to the nonvital parts would have continued during the period of dying; the pain caused by the wounds to the face and hands were the most painful due to the presence of numerous nerve endings at those body parts; and, the facial wounds were inflicted while each victim was alive, as evidenced by the substantial bleeding from the wounds. Also, Evelyn Brown sustained eight cutting wounds to the face and Tina Brown sustained six cutting wounds to her face and one to her right hand.

jurors who have a fixed opinion that a sentence of life imprisonment should not be imposed for a conviction of first degree murder. *Morgan v. Illinois,* 504 U.S. 719, 735–36, 112 S.Ct. 2222, 2227, 119 L.Ed.2d 492, 507 (1992). In *Morgan,* the Court held that a capital defendant was entitled upon request to life-qualify the jury. *Id.* Where counsel fails to life-qualify jurors, counsel is not ineffective where jurors assured counsel and the court they would follow the instructions and the law. *Commonwealth v. Carpenter,* 533 Pa. 40, 45, 617 A.2d 1263, 1269 (1992). Where there is no allegation or proof that any of the jurors were unfair, partial, or unable or unwilling to follow the law, counsel is not ineffective, as a matter of law, for declining to life-qualify a capital jury. *Commonwealth v. Blount,* 538 Pa. 156, 163–64, 647 A.2d 199, 203–04 (1994).

Appellant claims that because his counsel failed to ask two jurors whether they could consider life as a viable sentence, he was denied a constitutional right guaranteed by *Morgan* and, thus, his counsel was ineffective.[13] The record reflects that the two jurors had assured the court they would follow the court's instruction and apply the law in deciding the case and in assessing the proper penalty, if necessary. Appellant presented no evidence that either juror had a fixed predisposition towards the death penalty. Also, since appellant was tried five years before *Morgan* was decided, counsel is not ineffective for failing to anticipate a change in the law five years later. Appellant's argument fails.

Appellant next claims that trial counsel erred when he declined to object to the prosecutor's penalty hearing summation. During the penalty hearing, a prosecutor may permissibly quote the victim's dying words and characterize them as a plea for life. *Commonwealth v. Duffey,* 519 Pa. 348, 371, 548 A.2d 1178, 1189 (1988). Further, the prosecutor is permitted during the penalty summation to ask the sentencing jury to imagine the victim's fear as the victim tried to ward off the defendant's vicious attack. *Commonwealth v. Basemore,*

---

**13.** The other ten jurors were life qualified and they all expressly assured counsel that they had no such fixed opinion and would decide any penalty based on the evidence and the law.

*supra,* 525 Pa. at 530, 582 A.2d at 870. Counsel is not ineffective for declining to object to the prosecutor's summation unless the challenged remark prejudices the defense. *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121, 125 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).

■■■ Appellant claims that the prosecutor's summation about Tina Brown's last words and about torture were either improper or not supported by the record and counsel was ineffective for failing to object. The prosecutor said:

> The eloquent pleas of counsel to spare the lives of these two men pale by comparison with the most eloquent plea that you ever heard for mercy and life, and that was the girl Tina Brown. "I ain't gonna tell, I won't tell, I ain't gonna tell." She was saying it the only way she knew how, please don't kill me. I don't even know why I'm dying. What did I do?

The record reflects that the remarks are quoted verbatim from the victim's dying words, as admitted by appellant himself. The prosecutor properly interpreted those words as a plea for life. Further, the summation regarding torture had a basis in the record when the testimony of Dr. Hoyer, the medical examiner, and the physical evidence is considered. Since appellant fails to demonstrate error or prejudice, his claim fails.

■■■ Appellant next claims that trial counsel erred when he declined to object when the trial court instructed regarding voluntary manslaughter and commented that there was insufficient evidence to sustain a verdict of voluntary manslaughter. One charged with murder is entitled to an instruction on the lesser offense of voluntary manslaughter only if the evidence reasonably supports such an instruction. *Commonwealth v. Williams,* 537 Pa. 1, 30, 640 A.2d 1251, 1265 (1994). Voluntary manslaughter involves a killing in a sudden and intense passion resulting from a serious provocation or an unreasonable belief in self-defense. 18 Pa.C.S. § 2503(a) and (b). A trial court is permitted to instruct a jury that there is

little, if any, evidence to support a lesser offense of voluntary manslaughter as long as the decision is left to the jury. *Commonwealth v. Bennett,* 471 Pa. 419, 425–26, 370 A.2d 373, 376–77 (1977).

The trial court stated that there was little evidence, if any, to reduce the crime to manslaughter but instructed the jurors that the decision was their decision to make and the court's view of the evidence had no controlling effect in "any way, shape or form." Here, the killings were preceded by threats, subterfuge, binding and gagging, rape and torture, all of which support a finding of willful, deliberate and premeditated killings. Appellant made no showing of a sudden and intense passion resulting from a serious provocation or an unreasonable belief in self-defense. Appellant has failed to demonstrate error on the part of the trial court and likewise error on the part of defense counsel.

Appellant next claims that trial counsel erred when he declined to present expert testimony regarding appellant's reading ability during the suppression hearing. Where counsel did not know and had no reason to know about a defendant's alleged mental impairment at the time, counsel is not ineffective for failing to exploit it. *Commonwealth v. Stanley,* 534 Pa. 297, 300, 632 A.2d 871, 872 (1993).

The record reflects that at the time of the suppression hearing, appellant had given counsel no reason to believe that he was mentally impaired or had a reading comprehension problem. Appellant communicated with counsel easily. Counsel reviewed appellant's school records before the suppression hearing and determined that appellant was not in any special classes or curriculum for the learning disabled. It was in preparation for trial that counsel first suspected that appellant might have a reading problem. At trial, counsel presented a school psychologist, Mark Molyneux, to support his claim that appellant was unable to understand his *Miranda* rights or read and formulate his confession.

Appellant claims that his mental impairment could have been discovered before the suppression hearing if counsel had

conducted a more thorough pre-suppression hearing investigation. This claim is contradicted by counsel's testimony at the post-verdict hearing respecting the extent of his preparation. Further, appellant has failed to demonstrate what counsel should have done or that the outcome at the suppression hearing would have been different. Appellant's claim has no merit.

Appellant finally claims that trial counsel was ineffective when he failed to present evidence at a sidebar conference in the penalty phase regarding a mitigating circumstance. The record reflects that trial counsel did not request permission at a sidebar conference to incorporate Molyneux's guilt phase testimony into the penalty hearing to prove mitigating circumstance (e)(3), respecting appellant's capacity to appreciate the criminality of his conduct and conform his conduct to legal requirements. When counsel made the request before the sentencing jury, the trial court properly denied the request. The court pointed out to trial counsel that the expert did not testify about any fact that would support (e)(3) and that counsel had failed to mention his intention to present the evidence for that purpose at the previous side-bar conference. Nevertheless, the court did permit incorporation of that evidence in order to prove mitigating circumstance (e)(8), respecting the character and record of the appellant and the circumstances of his offense. On review of the record, while the exchange of the court with counsel constituted mild criticism of counsel, it contained no criticism of appellant. Appellant has demonstrated no error and no prejudice, particularly since the evidence was admitted.

We now comply with our duty under 42 Pa.C.S. § 9711(h)(3)(iii) to review sentences of death from the standpoint of the proportionality to sentences imposed in similar cases. *Commonwealth v. Zettlemoyer, supra,* 500 Pa. at 63, 454 A.2d at 961. We have reviewed the sentence imposed on appellant in light of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. *See Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–08 (1984). We perceive no excess or disproportionality in the

sentence imposed on appellant. Further, the record does not provide any basis for belief that the sentence of death was the "product of passion, prejudice or any other arbitrary factor." *See* 42 Pa.C.S. § 9711(h)(3)(i). Also, the evidence supports the finding of three aggravating circumstances specified in 42 Pa.C.S. § 9711(d) and of three mitigating circumstances. *See* 42 Pa.C.S. § 9711(h)(3)(ii). Accordingly, the sentences must be affirmed.

Judgments of sentence affirmed.[14]

NIX, former C.J., and MONTEMURO, J., sitting by designation, did not participate in the decision of this case.

CAPPY, J., concurs in the result.

---

**14.** The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor, 42 Pa.C.S. § 9711(i).