J-S40007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
WILLIAM MAYS   :
  :
Appellant   :   No. 3225 EDA 2014

Appeal from the Judgment of Sentence May 6, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0004938-2012

BEFORE:  OTT, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:       **FILED AUGUST 10, 2017**

Appellant William Mays appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of first-degree murder, attempted murder, and related offenses. After careful review, we affirm.

On April 9, 2011, officers responded to a reported shooting and discovered two victims with gunshot wounds near a minivan parked in front of 5321 Malcolm Street in Philadelphia.  Saquanne Stanford was lying in the street and holding onto the door of the minivan.  Michael Askew was seated in the passenger seat with his head slumped over onto the driver's seat. Both men were bleeding profusely.

_____

[*] Former Justice specially assigned to the Superior Court.

When medical personnel arrived, paramedics treated Stanford's wounds and rushed him to the University of Pennsylvania Hospital. Although Stanford received gunshot wounds to his upper neck and his rear scalp and sustained fractures of his skull and his left jaw, doctors noted that Stanford was awake, alert, and orientated. Toxicology reports revealed that Stanford's blood contained Benzodiazepines and THC. As Stanford's injuries did not require surgical invention, he was released to a rehabilitation facility.

While Stanford survived his injuries, medical personnel pronounced Askew dead at the scene of the shooting. Autopsy results revealed that Askew's cause of death was a gunshot wound to the neck and the manner of his death was homicide. Based on the extent of Askew's injuries, Dr. Gary Collis, forensic pathology expert, testified that the victim did not die immediately from his injuries but instead likely collapsed due to a large loss of blood and difficulty breathing. Toxicology results revealed that Askew's blood contained Alprazolam (Xanax), cocaine and ethanol.

Officers investigating the scene of the shooting discovered several pieces of ballistic evidence from two different guns. Officers recovered six .40 caliber fired cartridge casings outside of the vehicle, three of which were found on the sidewalk and three in the grass in front of 5319 Malcolm Street. Officers seized two .45 caliber fired cartridge casings inside the vehicle, one of which was on the back of the front passenger seat underneath Askew and the other on the middle rear passenger seat. In

addition, officers discovered two .45 caliber bullet jackets, one on the floor near Askew's front leg and one in a rear bench seat.

Officer William Trenwith employed steel trajectory rods to determine the path of the bullets. Although Officer Trenwith could not conclude which direction the shooter fired the .45 caliber gun, he ascertained that this gun was fired from inside the vehicle. In addition, Officer Trenwith determined that a second shooter, who was standing very close to the minivan, fired a .40 caliber firearm into the passenger side of the vehicle.

The officers could not find any witnesses to the shooting. Detective George Fetters went to the hospital to speak with Stanford, who initially claimed that he did not know what happened. After several attempts to interview Stanford, Detective Fetters convinced Stanford to give a statement on May 9, 2011, but Stanford did not identify the shooters. However, on May 12, 2011, Detective Fetters learned from one of Stanford's family members that Stanford had revealed information about the shooting over several text messages, in which he claimed to know the identity of one of the shooters and the motive for the shooting. Stanford also discussed his plan for revenge. Detective Fetters obtained copies of the messages from the relative's phone.

After searching for Stanford, Detective Fetters brought Stanford to the homicide unit on February 1, 2012 and confronted him with the text messages. Stanford then gave a handwritten statement, identifying one of the shooters as a man known as "Will" or "Man Man" and describing where

he lived. When presented with a photo array, Stanford circled Appellant's photo and identified him as one of the shooters.

Stanford revealed that prior to the shooting, he had stolen Appellant's gun while the men were together on Conestoga Street. Appellant had left his gun on top of a car tire and went inside his home; Stanford admitted taking Appellant's gun. On the night of the shooting, Stanford called Appellant, told him he had taken the gun, and asked to return it. Appellant asked Stanford to meet him on Conestoga Street. Stanford agreed and brought Askew along with them. When they arrived, Appellant asked Stanford to drive him to his cousin's house on Malcolm Street. Stanford drove Appellant to this location and was about to park at the end of the block, when Appellant directed Stanford to park between two particular cars. Stanford followed this direction and parked the vehicle. As the left door of the minivan opened, Appellant started shooting at Stanford and Askew while he was seated in the minivan. Stanford gave no information about the possibility of a second shooter.

Detective Fetters located Appellant in a Delaware County prison and discovered that Appellant was charged with an incident that provided evidence of his involvement in the shooting in this case. On July 28, 2011, Appellant fled from police who attempted to initiate a traffic stop of his unregistered vehicle. After Appellant slowed down at the intersection of Chester Pike and McDade Boulevard, his passenger jumped out of the vehicle and ran towards a nearby Walgreens. After Appellant drove away at

a high rate of speed and collided with two vehicles, he was taken into police custody. The police also arrested Appellant's passenger, Christopher Graham, who subsequently gave a signed statement.

About a month later, Walgreens employees notified police that a firearm was discovered in a secure storage facility at the location where Graham had fled. Officers responded to the store and recovered a stainless steel Kimber Target II .45 caliber pistol that was loaded. Officers determined that the gun had been stolen from Dwayne Eugene Bale of 234 East Filbert Street in Lancaster, Pennsylvania. Ballistics experts concluded that two of the .45 caliber fired cartridge casings and two .45 caliber bullet jackets recovered from inside the minivan involved in the shooting were fired from the .45 caliber pistol recovered from the Walgreens.

The police were subsequently contacted by Virgil Pauling, one of Appellant's former cellmates in county prison. Pauling indicated that Appellant often spoke about a shooting he committed and gave Pauling details that matched Stanford's account of the April 9, 2011 shooting. Moreover, Appellant shared with Pauling that police attempted to stop his vehicle when he had the murder weapon in his glove compartment so he attempted to evade police in a high-speed chase and told his passenger to take the weapon and flee.

Based on this evidence, Appellant was arrested for the murder of Michael Askew and the attempted murder of Saquanne Stanford. He was also charged with carrying a firearm without a license, carrying a firearm in

public in Philadelphia, and possession of an instrument of crime. On May 6, 2013, a jury convicted Appellant of the aforementioned charges. On the same day, the trial court sentenced Appellant to life imprisonment without the possibility of parole along with a concurrent imprisonment term of 28½ to 57 years.

On May 9, 2013, Appellant filed a notice of appeal. However, on July 10, 2013, this Court dismissed the appeal due to Appellant's failure to file a docketing statement pursuant on Pa.R.A.P. 3517. On December 16, 2013, Appellant filed a petition for writ of mandamus with the Pennsylvania Supreme Court. On February 5, 2014, the Supreme Court directed the trial court to appoint Appellant new counsel. The trial court appointed James Anthony Lammendola, Esq. to represent Appellant.

On June 17, 2014, Appellant filed a petition under the Post Conviction Relief Act. On October 24, 2014, the lower court reinstated Appellant's appellate rights *nunc pro tunc*. Atty. Lammendola filed a concise statement of errors complained of on appeal on Appellant's behalf pursuant to Pa.R.A.P. 1925(b). On January 7, 2015, this Court directed the trial court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (1998). On January 22, 2015, the lower court concluded that Appellant should be allowed to represent himself as he had knowingly, intelligently, and voluntarily waived his right to counsel. On January 22, 2015, the trial court ordered Appellant to file a Rule 1925(b) Statement. On February 2, 2015, Appellant filed a timely 1925(b) statement and asked for permission to file a

supplemental statement upon receipt of his transcripts.  On July 17, 2015, the trial court filed its first 1925(a) opinion.  On October 9, 2015, Appellant filed a supplemental Rule 1925(b) statement.  On June 27, 2016, the trial court filed a second 1925(b) opinion.

Appellant raises numerous claims for appellate review that can be condensed into ten arguments. First, Appellant argues that the bill of information was defective as it did not properly inform him of the charges against him.  Although Appellant was charged with murder and attempted murder "as a principal or as an accomplice," Appellant asserts there is no evidence to support the accomplice charge.

This Court has established that:

> the purpose of a bill of information or indictment is to inform the defendant of the charges against him and to protect him against further prosecution for the same crime.  In addition, the Rules of Criminal Procedure indicate that the issues at trial are to be defined by the information.  However, pursuant to Pennsylvania law, an information is not to be read in an overly technical form. Thus, we will arrest judgment only when an error misleads a defendant as to the charges against him, precludes him from anticipating the Commonwealth's proof, or impairs a substantial right.

*Commonwealth v. Morales*, 669 A.2d 1003, 1006 (Pa.Super. 1996) (citations omitted).

We find Appellant's claim to be meritless as he does not explain how the information misled him as to the charges against him, prevented him from preparing his defense or impaired a substantial right.  While Appellant claims there was no evidence to suggest he committed the shooting with an

accomplice, Appellant ignores ballistic evidence that suggests there were two shooters firing different firearms from different locations. As a result, the trial court did not err in denying this claim.

Second, Appellant argues that his right to confront the witnesses against him was violated as he did not have the opportunity to cross-examine Christopher Graham, the man who fled from Appellant's vehicle and discarded the murder weapon after a police chase in Delaware County.

It is well-established that "[w]hether a defendant was denied his right to confront a witness under the Confrontation Clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Milburn**, 72 A.3d 617, 618 (Pa.Super. 2013). The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right .... to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI.

Appellant did not have the right to confront Graham, who never testified at Appellant's trial. The prosecution offered evidence of their arrest of Graham and Appellant in Delaware County to explain their course of conduct in finding the murder weapon. In addition, the prosecution introduced evidence of their good faith efforts to locate Graham before trial to explain to the jury why Graham was not present to testify at trial. As a result, Appellant has not shown that his right to confrontation was violated.

Third, Appellant challenges several remarks made by the prosecutor during trial. When reviewing claims of prosecutorial misconduct, we are guided by the following standards:

it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. *Commonwealth v. Correa*, 444 Pa.Super. 621, 664 A.2d 607 (1995). Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. *Commonwealth v. Rios*, 554 Pa. 419, 721 A.2d 1049 (1998). Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Fletcher*, 580 Pa. 403, 434–35, 861 A.2d 898, 916 (2004) (quotation and quotation marks omitted). The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28 (1991). Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220 (2006); *Commonwealth v. Holley*, 945 A.2d 241 (Pa.Super. 2008). Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation. *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501 (2005).

*Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa.Super. 2016).

Specifically, Appellant argues that it was improper for the prosecutor to 1) refer to Appellant as an assassin, 2) reveal details of Appellant's

criminal history, 3) suggest that Stanford's text messages referred to Appellant as one of the shooters, and 4) use Stanford's "perjured" testimony.

With respect to Appellant's claim that the prosecutor improperly referred to him as an "assassin," we find this remark constituted permissible oratorical flair in arguing its theory of the case. The Commonwealth presented evidence that Appellant directed Stanford to drive his vehicle to his cousin's home and to specifically park between two particular vehicles in front of the residence. When Stanford complied, he asserts that Appellant started shooting at him and Askew from inside the vehicle. The prosecutor also presented evidence that a second shooter was lying in wait for the men and began shooting at them from outside the vehicle at that very same moment. As the prosecution's theory is supported by evidence presented at trial, we find that the prosecutor's use of oratorical fair in advancing this argument did not render Appellant's trial unfair.

With respect to Appellant's claim that the prosecutor improperly referred to his criminal history, this claim is meritless as evidence of Appellant's criminal activity in Delaware County shortly after the shooting of Askew and Stanford was admissible to show Appellant's connection to the murder weapon.

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such

as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Commonwealth v. Aikens***, 990 A.2d 1181, 1185 (Pa.Super. 2010) (quoting ***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009)).

The prosecutor did not commit misconduct in referring to Appellant's July 28, 2011 arrest in Delaware County as this evidence was offered to show how police discovered the weapon used in the shooting of Askew and Stanford. The evidence showed two months after the shooting, Appellant attempted to evade the police and led officers on a high-speed chase. During this pursuit, Appellant dropped off his passenger, who subsequently fled with the murder weapon and attempted to conceal it at the nearby Walgreens store. As the prosecutor properly presented this relevant evidence to the jury, Appellant is not entitled to relief on this issue.

With respect to Appellant's claim that the prosecutor committed misconduct in telling the jury that the text messages that Stanford sent to his relative identified Appellant as the perpetrator, we find this remark reflected a fair deduction and inference from the evidence discovered in the homicide investigation. When officers confronted Stanford with his text messages at the police station, he admitted to police that he was referring to Appellant. ***See Jaynes***, ***supra*** (stating that the prosecution "may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom"). As such, this prosecutorial misconduct claim fails.

- 11 -

With respect to Appellant's allegation that the prosecution coerced Saquanne Stanford into giving false testimony at trial, we find this assertion unsupported by any evidence. Although Stanford had given the police a handwritten statement identifying Appellant as the perpetrator and explaining the circumstances surrounding the shooting, Stanford recanted this identification at trial and claimed that he did not recall giving earlier statements to police. As such, the prosecution was permitted to introduce Stanford's prior inconsistent statements to impeach his credibility. *See* Pa.R.E. 613(a) (providing that "[a] witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility"). As it is evident that the prosecutor acted within the bounds of the law, Appellant is not entitled to relief on his claims of prosecutorial misconduct.

Fourth, Appellant argues that the trial court should have granted a mistrial after it discharged one of the jury members.

> It is well–settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Rayner*, 153 A.3d 1049, 1056–57 (Pa.Super. 2016) (quoting *Commonwealth v. Chamberlain*, 612 Pa. 107, 30 A.3d 381, 422 (2011)).

Our review of the record reveals that during the trial, juror #5 passed a note to the trial court indicating that he felt he could no longer fulfill his responsibilities as a juror as 1) he feared for his personal safety and the safety of his family as he felt Appellant's family were trying to intimidate him, 2) jury service created a financial hardship for his family and 3) his absence was preventing his wife from fulfilling her employment obligations. The trial court conducted an individual colloquy of Juror #5 and determined that the juror had not communicated his feelings or experiences to the other jury members. Thereafter, the trial court conducted colloquies of the remaining jurors and determined they did not share the same concerns as Juror #5.

Although the trial court ultimately dismissed Juror #5, it concluded that it was unnecessary to discharge all the jurors as it found Juror #5's true concern was the inconvenience of the trial to his family. Based on the colloquies, the trial court determined that the remaining jurors were able to perform their duties as fair and impartial jurors. Further, the trial court addressed Appellant's family outside the presence of the jury and cautioned them that any misconduct would not be tolerated. We conclude that the trial court did not abuse its discretion in dismissing Juror #5 and denying Appellant's motion for a mistrial.

Fifth, Appellant argues that the trial court abused its discretion in admitting crime scene photographs of Askew's deceased body. Our standard of review for evidentiary matters is well-established: "[t]he admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Rashid*, 160 A.3d 838, 842–43 (Pa.Super. 2017) (citation omitted).

In reviewing a challenge to the admission of crime scene photographs, this Court has established:

> Photographs of a murder victim are not *per se* inadmissible." *Commonwealth v. Cox*, 546 Pa. 515, 534, 686 A.2d 1279, 1288 (1996) [(citation omitted)]. In reviewing a challenge to the trial court's admission of photographs, we employ the abuse of discretion standard. *Commonwealth v. Pruitt*, 597 Pa. 307, 327, 951 A.2d 307, 319 (2008) (citation omitted). A trial court must engage in the following two-step analysis when considering the admissibility of photographs of homicide victims:
>
> > First a trial court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.
>
> *Commonwealth v. Tharp*, 574 Pa. 202, 222, 830 A.2d 519, 531 (2003) (citation omitted).

*Commonwealth v. Haney*, 634 Pa. 690, 131 A.3d 24, 37 (2015).

In this case, the trial court allowed the Commonwealth to admit black and white photos of the crime scene and Askew's deceased body. Even

assuming *arguendo* that the photographs were inflammatory, we agree with the trial court's assessment that the images had essential evidentiary value that outweighed any potential prejudice from their admission. The photos were necessary to depict the nature of the crime scene, the trajectory of the fired bullets, and the location of the recovered ballistic evidence in relation to the victim. We conclude the trial court did not err in admitting this evidence.

Sixth, Appellant claims that the trial court prevented defense counsel from properly cross-examining Stanford in violation of the Sixth Amendment. However, Appellant does not point to any specific portion of cross-examination where defense counsel's cross-examination was restricted. Appellant's bald assertion does not entitle him to review on appeal. *See Commonwealth v. Murchinson*, 899 A.2d 1159, 1162 (Pa.Super. 2006) (finding claim to be waived by the appellant's failure to develop meaningful argument with specific reference to the record in support of his claims). Moreover, the record shows that Stanford was subject to extensive cross-examination at trial. Thus, we need not review this claim any further.

Seventh, Appellant alleges that the trial court improperly admitted the written statement of Virgil Pauling, who claimed that Appellant had revealed details of his involvement in the shooting while the men shared a cell in prison. However, this statement was never admitted into evidence, but was merely referred to when Pauling testified against Appellant at trial.

Moreover, Appellant's claim that he did not have the chance to cross-examine Appellant about the "written deal" Pauling had with federal prosecutors is also meritless. Appellant agreed to the following stipulation to admit evidence of Pauling's agreement with federal prosecutors:

> [I]f Assistant U.S. Attorney Salvatore Astolfi were to testify, he would testify that he first encountered Mr. Virgil Pauling as part of an investigation into an unrelated identity fraud matter. Mr. Pauling is a witness, not the target of that investigation.
>
> Mr. Pauling has not been charged with any crimes related to that investigation. Mr. Pauling was transported to the Federal building and interviewed by the Federal authorities.
>
> As part of that interview, Mr. Astolfi, Mr. Pauling, and Mr. Pauling's attorney had what is called a proffer session.
>
> At that session, Mr. Pauling provided information about this unrelated investigation. Mr. Pauling provided information regarding a murder.
>
> The proffer session had the following conditions: First, that Mr. Pauling would be interviewed by Federal investigators. The statements provided by Mr. Pauling in this interview could not be used directly against him.
>
> Two: The government can and will pursue investigative leads from Mr. Pauling's statements.
>
> Three: If Mr. Pauling is a witness or party at any trial or legal proceeding and makes statements that are materially different than the information provided at the proffer session, the information from the proffer may now be used against Mr. Pauling.
>
> This final provision is to assure that Mr. Pauling does not abuse the opportunity for a proffer session by making materially false statements, commit perjury or offer false evidence.

Notes of Testimony (N.T.), 5/2/13, at 33-35.

Moreover, the trial court conducted an oral colloquy of Appellant on the record in which Appellant agreed to the stipulation and expressly acknowledged that he was giving up the right to cross-examine Pauling with respect to the agreement. As the trial court found Appellant entered into this stipulation knowingly, intelligently, and voluntarily, we find that Appellant waived his right to cross-examine Pauling on this agreement.

Eighth, Appellant argues that the trial court erred in instructing the jury on 1) evidence of Appellant's flight from police, 2) attempted murder, and 3) accomplice liability.

> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Proctor*, 156 A.3d 261, 269 (Pa.Super. 2017) (citations omitted).

Specifically, Appellant claims that the trial court abused its discretion in instructing the jury that Appellant's flight from police in Delaware County could be considered evidence of his consciousness of guilt. To reiterate, Appellant was arrested after he attempted to evade police in a high-speed chase that led to the discovery of the murder weapon used in the shooting of Stanford and Askew. Appellant argues that the instruction denied him a fair

trial as the criminal information did not inform Appellant that his flight would be used against him as evidence of consciousness of guilt.

Appellant offers no authority to support his suggestion that the prosecution is required to specifically set forth its entire evidentiary case against a defendant in a criminal information. This issue is waived by Appellant's lack of development of the claim. *Commonwealth v. Woodard*, 129 A.3d 480, 509 (Pa. 2015) (holding that "[w]here an appellate brief fails to ... develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him").

Moreover, this Court has held that a trial court may instruct a jury that a defendant's flight from police may be considered as consciousness of guilt. "[W]here evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt." *Commonwealth v. Lukowich*, 875 A.2d 1169, 1173–74 (Pa.Super. 2005) (upholding trial court's instruction on the defendant's flight). In this case, two months after the shooting of Askew and Stanford, Appellant led police on a high-speed chase which led to his apprehension. During the chase, Appellant's passenger fled from the vehicle and ran towards a Walgreens store, where police subsequently recovered the .45 caliber firearm that was used to murder Askew. As there was sufficient evidence to support a jury instruction indicating that Appellant's flight could

be used as substantive evidence of guilt, we find Appellant's claim to be meritless.

Appellant also argues that the trial court erred in instructing the jury on attempted murder and accomplice liability. However, these claims are waived as defense counsel never made a specific objection to these instructions and raises these arguments for the first time on appeal. Our rules of criminal procedure require that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C). ***See also Commonwealth v. Pressley***, 584 Pa. 624, 628, 887 A.2d 220, 224 (2005) (holding that "[t]he pertinent rules [of Criminal Procedure] ... require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction"). Accordingly, because these claims were not preserved for our review, we need not review them further.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/10/2017

- 19 -