Commonwealth *v.* Johnson, Appellant.

Argued March 19, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert X. Medonis,* for appellant.

*Martin Lubow,* Assistant District Attorney, with him *George Ross,* Assistant District Attorney, and *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, April 16, 1963:

The defendant, Allen Johnson, was indicted and tried for the murder of Howard "Bubbie" Washington. The jury returned a verdict of guilty of murder in the first degree and fixed the penalty at death. A motion for a new trial was denied and sentence was passed in accordance with the jury's verdict. From the judgment, this appeal was taken. In compliance with the Act of February 15, 1870, P. L. 15, 19 P.S. §1186, we have carefully reviewed both the law and the evidence and are of the opinion that the ingredients of murder in the first degree were proven to exist beyond a reasonable doubt.

The factual background was as follows:

About 4:40 a.m. o'clock on November 8, 1961, the defendant and the deceased engaged in a fight in the S. & S. Club in the Hill District of the City of Pittsburgh. The versions were conflicting as to which individual was the aggressor. The police were called and a radio cruise car was dispatched to the scene. Upon arrival, the police questioned the defendant as to the identity of the other person or persons involved, but he refused to disclose any such information.

The police took the defendant to the hospital where he was given emergency treatment, requiring five sutures to close an existing wound in the skull area above the left eye and six sutures to close another wound on the inner surface of the lip. A one per cent concentration of the drug procaine was injected to alleviate the pain. X-rays were taken which proved negative as to skull injury. He was discharged from the hospital and requested to return on a later date in order that the sutures might be removed.

Somtime between five and seven a.m. o'clock of the same day, the defendant phoned the son of the owner of the Ringside Bar, where Washington was employed as a bartender, and told him he was going "to get" Washington and others for having "ganged me." About six-fifty a.m. o'clock of the same morning, he accosted the owner of the Ringside Bar and told him, "I'm going to get your bartender, Bubbie Washington." Sometime between seven and eight o'clock a.m., he boarded a jitney and asked the driver if he knew anyone who had a pistol, and said that he wanted to buy one. He then waited an hour for a pawnshop to open, where he purchased a 22 caliber rifle about nine-fifteen a.m. Shortly thereafter, he entered another store and purchased a box of 22 caliber long bullets. In this business place, he unwrapped the rifle and loaded it with several bullets.

He then proceeded to the Ringside Bar, where Washington was working. He thrust the rifle between two patrons, who were standing at the bar, pointing it at Washington about two and one-half feet away, and fired. Washington ran towards the rear but fell on a stairway leading to a storeroom. The defendant ejected the spent cartridge, reloaded the chamber, walked to the location of the deceased and said "get up." When informed the deceased could not move, he expressed satisfaction and a wish that he were dead. He then told the proprietor to call the police. When they arrived, he handed over the rifle and told them, "I shot him. I hope I killed him." Upon examination, it was disclosed that the rifle contained fourteen bullets. Washington was taken to a hospital where he was pronounced dead upon arrival. An autopsy disclosed that death was caused by a gunshot wound. The bullet entered the upper left arm, passed through the left chest wall, the heart, the lungs, and lodged in the right chest.

Only two assignments of error are submitted on appeal. Neither one has a semblance of merit.

Gabriel Cocheres, sergeant of police of the Pittsburgh Police Department, was called as a witness by the Commonwealth. He was the officer in charge at 4:30 a.m. o'clock on November 8, 1961. He told of being notified of the trouble[1] at the S. & S. Club and hurriedly proceeding there to investigate. He stated that he questioned the defendant, both at the club and in the hospital, in an attempt to ascertain the circumstances of the fight and the names of others involved. He identified a police report designated as "Aided Case Report," which was admitted in evidence. This report was prepared by another police officer and it is now contended that its admission violated the hearsay rule

---

[1] This was incident to the fight that occurred hours before the shooting.

and that certain portions of Cocheres's testimony were based upon information gained from this report.

A reading of the record readily discloses patent misunderstanding upon the part of the defense counsel in this regard. Every portion of the witness's testimony was based upon personal knowledge obtained at the scene and from questioning the defendant. The report itself was completely innocuous and in no way prejudiced the defendant. It was the usual report prepared by participating officers who take anyone to a hospital. It merely recited in detail the date, time and history of the police being notified; the car and officers who investigated; the identity and description of the injured party; the treatment given and diagnosis received; the information gained from the injured party as to the occurrence. The report involved specifically stated that the defendant did not know who assaulted him. After the report was prepared, it was submitted to the defendant, who signed his name at the bottom thereof. It is readily apparent that no error was committed in making this report a part of the case record and more importantly, when it was offered for admission counsel stated, "The defense has no objection."

It is further argued that the evidence established that the defendant had consumed a large quantity of alcoholic intoxicating beverages and this, coupled with the effects of the severe beating and the injection of the drug procaine in the treatment of his injuries, so beclouded his intellect as to deprive him of the power necessary to deliberation and premeditation to constitute first degree murder.

The evidence as to the defendant's drinking and resulting condition concerned only the period of time prior to the occasion of the fight in the S. & S. Club. Even this was not in full accord. Some witnesses did describe his condition as "high" and another as "intoxicated" *at the time of the fight.* But, this was ap-

proximately five hours before the killing. There was no evidence of his drinking after the fight or that his previous drinking affected his condition in any manner at the time of the killing. In fact, in his written statement to the police he himself described his condition at the relevant time as "sober." The truth of this was not questioned at trial.

The drug procaine was injected as a local anesthesia at the site of the injuries to temporarily deaden the nerve reaction in these areas. It was described by the physician as having the same effect incident to the injection of novocaine when a tooth is extracted. Moreover, the injection of this drug took place hours before the killing and there is not a scintilla of evidence in the record to show that this incident affected or influenced the defendant's mental processes in any degree at or about the time of the killing. On the other hand, there was an abundance of testimony to establish the fact that for at least a period of two hours before the killing and at the time thereof, the defendant was in full control of his intellect and acted as a deliberate, calculating individual. It is fundamental that on appeal we must consider the record in the light most favorable to the Commonwealth's case: *Commonwealth v. DeMoss*, 401 Pa. 395, 165 A. 2d 14 (1960); *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A. 2d 421 (1962). A careful reading of the record leads inescapably to the conclusion that this was a calculated killing, perpetrated by an individual whose mind was filled with hatred, a lust for revenge, and completely devoid of social conscience.

Whether or not the defendant enjoyed the mental capacity necessary to have committed a first degree murder was for the jury to determine and the trial court adequately and fairly submitted this issue to the jury for its resolvement. It could not be determined as a matter of law: *Commonwealth v. Logan*, 361 Pa.

186, 63 A. 2d 28 (1949); *Commonwealth v. Woodhouse,* 401 Pa. 242, 164 A. 2d 98 (1960).

When this case was argued before this Court, counsel for the Commonwealth informed us of the district attorney's intention to recommend to the Board of Pardons of the Commonwealth that the sentence of the defendant be commuted to life imprisonment. In view of the circumstances surrounding this case such a recommendation may be worthy of consideration.

Judgment affirmed.