372 A.2d 764

COMMONWEALTH of Pennsylvania

v.

Matthew S. MOTLEY, Appellant.

Supreme Court of Pennsylvania.

Argued June 30, 1975.

Decided April 28, 1977.

422

Marilyn J. Gelb, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven, H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Harry M. Spaeth, Jr., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Matthew S. Motley was convicted by a jury of murder of the first degree. Post-trial motions were denied and a sentence of life imprisonment imposed. Appellant asserts that he is entitled to a new trial because the court erroneously instructed the jury on the

standards for determining the voluntariness of appellant's statements to police. We agree, reverse the judgment of sentence, and grant a new trial.

On July 31, 1960, the body of Reynold C. Tropman was discovered in the bedroom of his Philadelphia apartment. Pieces of pillowcase bound Tropman's legs; a bloody handkerchief lay near his head. The Philadelphia medical examiner determined that death was caused by manual strangulation.

Appellant, who had worked from time to time for Mr. Tropman doing odd jobs and running errands, was arrested later that day. He subsequently was charged with murder. In 1962, appellant was convicted by a jury of murder of the first degree and sentenced to life imprisonment. On an appeal taken as if timely filed [1] this Court reversed the judgment of sentence and granted a new trial. *Commonwealth v. Motley*, 448 Pa. 110, 289 A.2d 724 (1972). At the subsequent trial in January, 1973, a mistrial was declared when the jury was unable to reach a verdict. Appellant was again tried in January, 1974, and found guilty by a jury of murder of the first degree. Post-trial motions for a new trial and in arrest of judgment were filed. The trial court denied the motions and imposed sentence of life imprisonment. This appeal ensued.[2]

1. Appellant had originally withdrawn his post-trial motions and took no appeal. In 1967, appellant filed a petition under the Post Conviction Hearing Act alleging that he had never been adequately informed of his appeal rights under *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). His petition was dismissed by the court of common pleas and the order affirmed per curiam by this Court. *Commonwealth v. Motley*, 434 Pa. 272, 252 A.2d 366 (1969). Motley then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. On September 25, 1969, the district court issued an order granting a writ of habeas corpus unless appellant was allowed to file post-trial motions as if timely filed.

2. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976).

I

██ In all cases of first degree murder this Court is required by statute to "determine whether the ingredients necessary to constitute murder in the first degree shall have been proved to exist." [3] In so doing we must consider the record in the light most favorable to the Commonwealth's case. *Commonwealth v. Brown*, 467 Pa. 388, 392, 357 A.2d 147, 149 (1976); *Commonwealth v. Caye*, 465 Pa. 98, 101, 348 A.2d 136, 137 (1975); *Commonwealth v. Robson*, 461 Pa. 615, 625, 337 A.2d 573, 578, cert. denied, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975); *Commonwealth v. Boyd*, 461 Pa. 17, 22, 334 A.2d 610, 613 (1975); *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A.2d 46 (1971); *Commonwealth v. Mount*, 416 Pa. 343, 205 A.2d 924 (1965); *Commonwealth v. Johnson*, 410 Pa. 605, 190 A.2d 146 (1963); *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (1962); *Commonwealth v. De Moss*, 401 Pa. 395, 165 A.2d 14 (1960). The settled test for sufficiency of the evidence is whether, accepting as true all of the evidence and all reasonable inferences arising therefrom, upon which, if believed, the jury could have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he has been convicted. *Commonwealth v. Thomas*, 465 Pa. 442, 444–45, 350 A.2d 847, 848–49 (1976); *Commonwealth v. Stanley*, 453 Pa. 467, 469, 309 A.2d 408, 410 (1973); *Commonwealth v. Paquette*, 451 Pa. 250, 253, 301 A.2d 837, 838–39 (1973); *Commonwealth v. Agie*, 449 Pa. 187, 189–90, 296 A.2d 741, 742 (1972). Reviewing the record in this light we are persuaded that the jury's finding of the necessary elements of the offense is supported by sufficient evidence.

3. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964).

■ The Commonwealth proceeded solely on a theory of felony murder.[4] A statement which appellant gave to police after his arrest was admitted into evidence and constituted the bulk of the Commonwealth's case. In this statement, appellant said:

". . . I walked in the bedroom, and he must have figured that I was trying to rob him. So I walked towards him and he ran around the bed, so I said to him, 'No, Mr. Tropman, I'm not trying to rob you.' So I pulled him towards me by the waist. Then I figured he would say I am trying to rob him, so I may as well get something out of it. After I pulled him off the bed I accidentally shoved him. So then, you know, I took his handkerchief which I saw on the dresser and put my right arm under his throat. I then tied his handkerchief around his mouth with the knot at the back of his head. As I tied the handkerchief . . . I looked around to see what I could find. He was laying on the floor then. Then I heard him grunt . . . and I took the handkerchief off his mouth, and then I saw the money on the dresser, and then I pulled out the drawers, you know, and ransacked that. Then after that I looked down at him, and then looked at him hard and he didn't look right, and I put my hand on his pulse. . . . So after that I found his pulse was not beating so I got scared. The last thing I saw was some more money on the other dresser, and I grabbed that and grabbed a box."

The jury could infer from this that the victim was killed by appellant in the course of a robbery. The statement was consistent with the findings of the medical examiner and the investigating officers who testified at trial for the Commonwealth. Thus, we conclude that the Com-

4. Act of June 24, 1939, P.L. 872, § 701 (formerly codified as 18 P. S. § 4701(1963)), repealed by Act of December 6, 1972, P.L. 1482, § 5. Felony murder is now murder of the second degree. Act of March 26, 1974, as amended, P.L. 213, § 4, 18 Pa.C.S.A. § 2502(b) (Supp.1976).

monwealth offered sufficient evidence to prove the ingredients necessary to constitute murder of the first degree.

## II

We now turn to appellant's contention that the trial court erroneously instructed the jury on the standards for determining the voluntariness of his confession. We agree.[5]

On the day following his arrest, prior to his arraignment, appellant made a detailed statement to the police implicating himself in the robbery and killing of Reynold Tropman. This statement constituted the heart of the Commonwealth's case against appellant. There was no independent evidence linking him to the crime.

Appellant testified that following his arrest, and throughout his lengthy interrogation, he was never advised of his constitutional right to remain silent and of his right to retained or appointed counsel. This testimony was essentially undisputed.[6] Appellant requested that the jury be instructed that the failure of the police to advise him of these rights was a "significant factor" in de-

---

5. Our disposition of this case renders unnecessary consideration of appellant's other assignments of error: (1) erroneous admission into evidence of statements concerning appellant's prior criminal activity; (2) photographs of appellant allegedly reenacting the crime should not have been admitted into evidence; (3) the prosecutor's inflammatory and prejudicial statements during closing arguments deprived appellant of a fair trial; (4) refusal to instruct the jury on intoxication as relating to the degree of the offense was erroneous; (5) the Commonwealth could not base its prosecution on a felony murder theory when no prosecution could be brought on the robbery indictment because a nolle prosequi had been filed; and (6) the court erroneously refused to charge the jury on voluntary manslaughter.

6. The only evidence that appellant received any information regarding his constitutional rights was the recollection of a former detective that another detective had advised appellant that he could be silent and had asked him if he had a lawyer. The detective's recollection was that these statements were made after appellant had already been interrogated and made certain admissions.

termining whether the statement was voluntary.[7] The trial court refused. Appellant objected to this ruling and to the charge actually given on voluntariness.

It is unnecessary to decide whether the trial court erred in refusing the charge requested by appellant because we agree that the charge given was improper and requires reversal. It effectively removed the attending circumstance of the absence of warnings from the jury's consideration of the voluntariness of appellant's statements.

■ Appellant's original trial took place prior to the decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which held that statements obtained during a custodial interrogation without having first informed the accused of his constitutional rights cannot be introduced at trial.[8] The rule applies only to trials commencing after the date of the *Miranda* decision, *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and is inapplicable to a post-*Miranda* retrial, *Jenkins v. Delaware*, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969); *Commonwealth v. Willman*, 434 Pa. 489, 255 A.2d 534 (1969).

■■ Although the *Miranda* rule is inapplicable, the Commonwealth must still demonstrate by a preponderance of the evidence that an incriminating statement is voluntary before it may be considered by the jury. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d

---

7. The requested point for charge read:
    "The fact that a defendant was not advised of his right to remain silent or his right to counsel at the beginning of the interrogation is a significant factor in determining whether a statement was voluntarily made."

8. The accused must be advised that he has a right to remain silent, that anything he says can be used against him, that he has a right to have an attorney present and, if he is unable to retain an attorney, that the court will appoint one to represent him. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L. Ed.2d 694, 726 (1966).

618 (1972); *Commonwealth v. Smith,* 447 Pa. 457, 291 A.2d 103 (1972); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968). This Court has adopted the Massachusetts or "humane" rule with regard to determining the voluntariness of statements by an accused. *Commonwealth v. Joyner,* 441 Pa. 242, 272 A.2d 454 (1971); Pa.R.Crim.P. 323(j). This procedure allows a defendant to attack the voluntariness of admissions at trial, even though a suppression court has held the statements admissible. The jury is instructed to disregard the statements if they determine the statements were involuntary. *Commonwealth v. Coach,* 471 Pa. 389, 370 A.2d 358 (1977); *Commonwealth v. Myers,* 472 Pa. 200, 371 A.2d 1279 (1977).

In determining voluntariness, the totality of circumstances surrounding the confession must be examined, *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Commonwealth v. Holton,* 432 Pa. 11, 247 A.2d 228 (1968), to determine if "the confession [was] the product of an essentially free and unconstrained choice by its maker," *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057 (1961) (opinion of Frankfurter, J.); *Commonwealth v. Hallowell,* 444 Pa. 221, 282 A.2d 327 (1971).

The failure of police to advise an accused of his constitutional rights to counsel and to remain silent are factors to be considered in the determination of voluntariness, notwithstanding the inapplicability of *Miranda.* *Davis v. North Carolina,* 384 U.S. at 740–41, 86 S.Ct. at 1764; *Haynes v. State of Washington,* 373 U.S. 503, 510–11, 83 S.Ct. 1336, 1341–42, 10 L.Ed.2d 513, 518–20 (1963); *Culombe v. Connecticut,* 367 U.S. at 610, 81 S. Ct. at 1883 (opinion of Frankfurter, J.); *Commonwealth v. Henderson,* 433 Pa. 585, 592, 253 A.2d 109, 113, cert. denied, 396 U.S. 936, 90 S.Ct. 281, 24 L.Ed.2d 236 (1969); *Commonwealth v. Walker,* 433 Pa. 124, 127–28, 249 A.2d 283, 285 (1969); *Commonwealth v. Hornber-*

*ger,* 430 Pa. 413, 415, 243 A.2d 341, 342 (1968); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 153, 239 A.2d 426, 432 (1968); *Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 160, 239 A.2d 434, 436 (1968); *Commonwealth v. Bishop,* 425 Pa. 175, 180, 228 A.2d 661, 664 (1967); *Commonwealth ex rel. Mount v. Rundle,* 425 Pa. 312, 318, 228 A.2d 640, 644 (1967); *Commonwealth v. Duggan,* 424 Pa. 394, 401, 227 A.2d 168, 173 (1967); *Commonwealth v. Patrick,* 424 Pa. 380, 382, 227 A.2d 849, 851 (1967); *Commonwealth ex rel. Mumford v. Cavell,* 423 Pa. 280, 282, 223 A.2d 852, 853 (1967); *United States ex rel. Bishop v. Rundle,* 437 F.2d 204, 206 (3d Cir. 1971); *Commonwealth ex rel. Storch v. Maroney,* 363 F.2d 149, 151 (3d Cir. 1966).

In *Davis v. North Carolina,* supra, Chief Justice Warren, writing for the Court, stated:

> "The review of voluntariness in cases in which the trial was held prior to our decisions in *Escobedo* and *Miranda* is not limited in any manner by these decisions. On the contrary, that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation, as is now required by *Miranda,* is a significant factor in considering the voluntariness of statements later made."

384 U.S. at 740, 86 S.Ct. at 1764. This Court has also characterized the absence of warnings as "significant," *Commonwealth ex rel. Mumford v. Cavell,* 423 Pa. at 282, 223 A.2d at 853, and "important," *Commonwealth v. Bishop,* 425 Pa. at 180, 228 A.2d at 664, to the voluntariness inquiry even when *Miranda* is not applicable.

■■ Here the trial court charged the jury:

> "As you know, the death in this case occurred in 1960. *The law enforcement personnel in this case had no legal obligation to warn the defendant of his Constitutional Right to remain silent, or to engage the*

*services of Counsel, although evidence as I recall it, was offered that some warnings were given. Your sole duty with respect to the statements herein is to determine whether they were voluntary, as I have defined voluntariness for you.*[9] In coming to this conclusion, you must consider the totality of the circumstances, as you find them, surrounding the making of the statement.

These circumstances include, but aren't limited to age, intelligence, education, experience, mental and physical state of the defendant, how he was treated, the time, place and conditions under which the statement was made, and the length of time the defendant was held in custody. All of the conversations which the police had with the defendant prior to interrogation, *including any discussion of the defendant's rights should be considered by you in determining whether the statement was voluntarily made. You may not, however, determine the voluntariness of the statement solely on the issue of whether any warnings were given."* (emphasis added)

Nothing in this charge informs the jury that the absence of warnings is a relevant factor in determining the voluntariness of admissions. Appellant was entitled to

---

**9.** The court defined voluntariness as follows:

"The word voluntary has a special meaning in the law. I wish now to explain it. The basic test for voluntariness is that to be a voluntary statement, it must be the product of a rational mind and free will. The defendant must have a mind capable of reasoning about whether to make a statement or to say nothing, and he must be allowed to use it. The defendant must have sufficient will power to decide for himself whether or not to make a statement, and he must be allowed to make his decision. This does not mean that the statement is involuntarily given because the defendant made a hasty or poor choice, and it might have been wiser not to say anything. Nor does it mean that it is voluntary because he made a statement in response to searching questions. It does mean, however, if the defendant's mind or will are confused or burdened with serious psychological abuse or other reproachment, any statement which he made then is involuntary."

have this factor considered by the jury. Cf. *Commonwealth v. Coach*, 471 Pa. 389, 370 A.2d 358 (filed Feb. 28, 1977) (failure to charge jury as to relevance of "unnecessary delay" between arrest and arraignment as a factor in determining voluntariness of a confession held reversible error). Appellant timely objected to the charge and requested a specific instruction to cure the error. It is unnecessary to decide whether the court was obligated to give the precise instruction requested by appellant. See *Commonwealth v. Sisak*, 436 Pa. 262, 270, 259 A.2d 428, 432 (1969) ("A party whose requested point, although erroneous, alerts the trial judge to an important issue in the case, does have cause for complaint if the law to which that point pertains is not otherwise correctly stated in the charge.") ; accord, *Commonwealth v. Haywood*, 464 Pa. 226, 232 n. 8, 346 A.2d 298, 301 n. 8 (1975); *Commonwealth v. Mitchell*, 460 Pa. 665, 672, 334 A.2d 285, 289 (1975). The deficiency of the instruction was brought directly to the court's attention, and it was error not to correct it with an appropriate additional instruction. Id.

Moreover, the balance of the court's charge regarding advice as to constitutional rights, rather than mitigating the error, compounded the prejudice to appellant. The court first instructed the jury that the police were under no obligation to advise appellant of his constitutional rights, and immediately thereafter stated that the "sole" duty of the jury was to determine the voluntariness of the statements as previously defined in the charge. The court's definition made no reference to the significance of an accused's ignorance of his rights. Subsequently, the court instructed the jury that it should consider all conversations which the police had with appellant, "including any discussion of the defendant's rights," having earlier adverted to the bare possibility that some warnings may have been given, as suggested by hearsay testimony in the record. Finally, the court instructed that

the determination whether warnings were given could not be the sole basis for a decision on voluntariness.

Reading the charge as a whole, as we must, *Commonwealth v. Rodgers,* 459 Pa. 129, 132, 327 A.2d 118, 120 (1974); *Commonwealth v. Davenport,* 462 Pa. 543, 557, 342 A.2d 67, 73 (1975); *Commonwealth v. Stafford,* 451 Pa. 95, 98, 301 A.2d 600, 602 (1973), it clearly fails to inform the jury that the absence of warnings or advice is a relevant factor in determining the voluntariness of admissions. Without an appropriate instruction bringing the absence of warnings to the attention of the jury as a relevant factor, the import of the charge, read as a whole, is (1) the jury should not consider the absence of warnings because the police, at the time of appellant's interrogation, had no obligation to give them, but (2) any warnings actually given should be taken into account.

This charge is identical in its effect to instructions found improper by the United States Supreme Court in *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), a pre-*Miranda* case. In *Haynes,* the trial court instructed the jury:

> ". . . [A] confession or admission of a defendant is not rendered involuntary because he is not at the time of making the same reminded that he was under arrest, or that he was not obliged to reply, or that his answers would be used against him, or that he was entitled to be represented by counsel."

373 U.S. at 517, 83 S.Ct. at 1345. Recognizing the misleading and prejudicial nature of this charge, the Court stated:

> "The jury was instructed in effect not to consider as relevant on the issue of voluntariness of the confession the fact that a defendant is not reminded that he is under arrest, that he is not cautioned that he may remain silent, that he is not warned that his answers may be used against him, or that he is not advised that

he is entitled to counsel. Whatever independent consequences these factors may otherwise have, they are unquestionably attendant circumstances which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession."

Id. at 516–17, 83 S.Ct. at 1345.

Appellant was entitled to an appropriate instruction informing the jury that the absence of warnings or advice as to his constitutional rights was a relevant factor in determining the voluntariness of his admissions. Absence of warnings is "unquestionably [an] attendant circumstance which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession." As in *Haynes*, the charge given precluded such consideration by the jury. We have often granted new trials on the basis of inadequate, unclear, or misleading charges. *Commonwealth v. Coach*, supra; *Commonwealth v. Wortham*, 471 Pa. 243, 369 A.2d 1287 (filed Feb. 28, 1977); *Commonwealth v. Goins*, 457 Pa. 594, 321 A.2d 913 (1974). Because appellant's admissions were the heart of the Commonwealth's case, the error in the charge cannot be said to be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967); *Commonwealth v. Martinolich*, 456 Pa. 136, 160 n. 15, 318 A.2d 680, 693 n. 15, cert. denied, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974).

Accordingly, we reverse and grant a new trial.

Former Chief Justice JONES did not participate in the decision of this case.

NIX, J., did not participate in the consideration or decision of this case.

EAGEN, C. J., and POMEROY, J., concur in the result.