J-A31017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SCOTT DAVID GRANT | |
| Appellant | No. 2101 MDA 2013 |

Appeal from the Judgment of Sentence July 30, 2013
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004066-2012

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 18, 2015**

Scott David Grant appeals from the judgment of sentence imposed on July 30, 2013, in the Court of Common Pleas of Lancaster County, made final by the denial of post-sentence motions on October 24, 2013.  On March 13, 2013, a jury convicted Grant of involuntary deviate sexual intercourse ("IDSI") (unconscious or unaware person), corruption of minors, and furnishing alcohol to minors.[1]  The court sentenced Grant and an aggregate term of seven-and-a-half to 15 years' imprisonment.  On appeal, Grant raises the following three issues:  (1) the trial court erred by failing to suppress certain statements made by Grant to the police because those statements were given during a custodial detention; (2) there was

_____

[1] 18 Pa.C.S. §§ 3123(a)(3), 6301(a)(1)(ii), and 6310.1, respectively.

insufficient evidence to support his IDSI and corruption of minors convictions; and (3) the court erred in refusing to include Pennsylvania Suggested Standard Jury Instruction 3.04(D) in its instructions to the jury on voluntariness.[2]   After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The facts and procedural history are as follows.   On April 28, 2012, Grant invited four teenagers over to his apartment, one male and three females, including the female victim, M.M.[3]   He plied them with alcohol, prescription drugs, and marijuana.   While the teenage male left at some point during the night, the girls all slept over at the apartment because they were concerned about their level of intoxication.   Subsequently, M.M. woke up during the early morning hours and found Grant, shirtless and sweating, positioned with his body over her body on the bed.   N.T., 3/12/2013, at 152. She testified she pushed him back, and asked "what was going on and what he had done." *Id.* at 153-154.   M.M. stated that Grant said "he ate [her] pussy." *Id.* at 154.   The victim also noticed that she was no longer wearing

---

[2]  We have reordered the issues based on the nature of the claims.

[3]  We note that the full names of the minors appear in the certified record; however, we will refer to these individuals by their initials in our discussion. The male is B.E., and the two female friends are K.W. and M.P.

a pair of sweatpants, which she recalled she had on when she went to sleep in Grant's bed that night. *Id.* at 151-152.

The victim subsequently reported the incident to police. On June 28, 2012, Detective Kenneth E. Lockhart, Jr., went to Grant's apartment to interview him. Grant gave a statement, pre-*Miranda*[4] warnings, in which he admitting to sexually assaulting M.M. The detective then decided to formally document the interview. He read Grant his *Miranda* rights, which Grant waived. The second interview, which was substantially similar to the first, was audio-recorded, and Grant signed an authentication of the recorded statement form, indicating that he willingly and voluntarily provided his recorded statement to the police.

Grant was subsequently charged with numerous offenses related to the incident. On December 19, 2012, he filed a pre-trial motion to suppress the incriminating statements he made to Detective Lockhart. A hearing was held on March 7, 2013. At that time, the court denied the motion.

The case proceeded to a jury trial on March 11, 2013. Grant's defense was that he never provided the teenagers with alcohol and drugs, and he was merely joking when he made the comment about inappropriately touching the victim. He also claimed that his *Miranda* waiver was involuntary, and that he made the incriminating statements because he had

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

just woke from a nap, was under the influence of prescription medications, and he simply wanted the police to leave him alone. Two days later, the jury found Grant guilty of IDSI, corruption of minors, and furnishing alcohol to minors. Sentencing was deferred for the Sexual Offender Assessment Board ("SOAB") to complete an assessment of Grant, as well as for a presentence investigation report to be completed. Subsequently, the SOAB conducted an examination and determined that Grant did not meet the criteria of a sexually violent predator.

On July 30, 2013, the court imposed a sentence of seven and half to 15 years' incarceration for the IDSI conviction, and a concurrent term of six months to seven years for the corruption of minors offense. The court also imposed a concurrent term of one year of probation for the furnishing alcohol to minors offense. Grant filed a post-sentence motion to modify his sentence, which was denied on October 24, 2013. This appeal followed.[5]

In his first issue, Grant claims the court erred in failing to suppress statements made by Grant to police because those statements were given during a custodial detention, were not preceded by **Miranda** warnings, and were not the product of a free, intelligent, and knowing waiver of his

_____

[5] On November 26, 2013, the trial court ordered Grant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Grant filed a concise statement on December 17, 2013. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 9, 2014.

privilege against self-incrimination and his right to consult with counsel prior to the interrogation. Grant's Brief at 34.

By way of background, Detective Lockhart was accompanied by a uniformed officer, Officer Schott, who was new to the police department and there "to see how to conduct an interview." N.T., 3/12/2013, at 257. Grant invited the officers inside his home and told Detective Lockhart where to have a seat. Detective Lockhart stated: "The interview begins with me advising Mr. Grant that I want to talk to him about an incident that occurred on April 28 into the early morning hours of the 29th when [K.K, M.M., B.E.] were at his apartment." *Id.* at 259. Grant started talking about an unrelated incident and the detective redirected him, testifying: "I explained to [Grant] that I knew he told [M.M.], from [M.M.] telling me, that [M.M.] woke up the night she was in his apartment, and he told her, when she asked, what did you do to me. He said to her, I ate your pussy." *Id.* at 260. Detective Lockhart stated Grant initially did not give a response but did not deny the incident occurred. *Id.* Grant then provided the detective with details, which lasted an hour, and he admitted "he licked her vagina" and "they were all pretty messed up." *Id.* at 260-261. Moreover, Detective Lockhart stated that Grant told him the assault lasted approximately five seconds and provided the following details:

> [M.M.] was laying on the bed, on her back with her legs flat on the floor. And [Grant] was over top of her, and he first pulled her shirt up slightly, kissed her belly, and then slid down

and licked her vagina, at which time she came to, put her hands on the back of his head.

He slid out from behind that and then up over top of her, and that is when [M.M.] would have asked, what are you doing to me?

*Id.* at 262.

Detective Lockhart then explained to Grant that he wanted "to formally document the interview." *Id.* at 263. Grant agreed to have the interview recorded with a digital voice recorder. *Id.* He indicated that he wanted to smoke a cigarette first and he could not do so inside the apartment. *Id.* at 264. Grant, Detective Lockhart, and the observing officer went outside for approximately ten minutes before returning to the residence. *Id.* Detective Lockhart then read Grant his *Miranda* rights, to which he said that he understood them and signed a written waiver indicated that he was willing to make a statement. *Id.* at 265. The second interview, which was substantially similar to the earlier questioning, was audio-recorded, and Grant signed an authentication of the recorded statement form. *Id.* at 265-268.

Grant now claims the police violated his *Miranda* rights during both interviews. First, he points to the following circumstances, which he claims established that he was subject to a custodial detention during the first interview: (1) the detective was already convinced that Grant had assaulted the victim when the detective decided to interrogate him; (2) the detective intentionally decided not to administer *Miranda* warnings and subjected

Grant to one hour of interrogation; (3) the detective posted a uniform officer, who was visibly armed, to stand beside the wall that was six feet from Grant; and (4) both officers followed him outside when he needed to smoke a cigarette. Grant's Brief at 39. Second, Grants asserts the second interview was also improper pursuant to *Missouri v. Seibert*, 542 U.S. 600 (U.S. 2004) (plurality), on the basis that where police intentionally engage in a technique of interrogation during the non-*Mirandized* portion of the interview, the *Miranda* portion is suppressible as the fruits of a constitutional violation. Grant's Brief at 41. Lastly, Grant claims his statements were unknowing and involuntary. *Id.* at 42-43.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 874 A.2d 108, 115 (Pa. Super. 2005), *quoting Commonwealth v. LaMonte*, 859 A.2d 495, 499 (Pa. Super. 2004).

With respect to the initial interview between Grant and Officer Lockhart, we note the following:

> The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any

significant way." "Interrogation" is police conduct "calculated to, expected to, or likely to evoke admission." When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.

The appropriate test for determining whether a situation involves custodial interrogation is as follows:

> The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring *Miranda* warnings.

*Commonwealth v. Baker*, 24 A.3d 1006, 1019-1020 (Pa. Super. 2011) (internal citations and quotations omitted), *aff'd*, 78 A.3d 1044 (Pa. 2013), *quoting* *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999).

Here, the trial court found the following:

At the Suppression Hearing, the court determined that the statements [Grant] made in his apartment, prior to the ***Miranda*** warnings being read and waived by him before what was essentially the second part of the interview, were not custodial because "[the court does] not believe that the mere presence of an officer in uniform is sufficient, in and of itself, to create a custodial situation." Further, testimony at the Suppression Hearing indicated that [Grant] invited one of the officers (Detective Kenneth E. Lockhart, Jr.) to sit down, and [Grant] chose his own seat "in proximity to Detective Lockhart." Although the first part of the interview took place prior to the reading of the ***Miranda*** warnings, it did not involve the assertion of authority by the officers, raised voices, or threats for a failure to cooperate with questioning. The detective questioning [Grant] did not do so in a calculating manner after inhibiting or limiting [Grant]'s freedom of action. [Grant] gave the relevant inculpatory statements in his apartment before he was given the ***Miranda*** warnings, and again after freely waiving his ***Miranda*** rights in the second half of the interview. As the court stated at the Suppression Hearing, "considering the totality of the circumstances here, that confrontation [the initial interview with police in [Grant]'s apartment] was not so overtly threatening as to wear down [Grant], frighten him or reasonably bring him into fear that if he did not answer questions or give certain answers that he would suffer some adverse consequence." It is for these reasons that the court determined the initial questioning was non-custodial and the statements given were admissible.

Trial Court Opinion, 4/9/2013, at 4 (record citations omitted). We agree.

Based on the totality of the circumstances, and using an objective standard, one cannot conclude Grant was "physically deprived of his freedom in any significant way or [] placed in a situation in which he reasonably believe[d] that his freedom of action or movement [was] restricted by such interrogation." ***Baker***, 24 A.3d 1006, 1019. As such, and contrary to Grant's assertions, he was not subject to a custodial interrogation when he made his initial statement to Detective Lockhart. Other than the officers'

mere presence, Grant does not demonstrate that there was any threat or force used against him. Therefore, we do not find the initial interview was improper.

Turning to Grant's post-*Miranda* interview, we are guided by the following:

> A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights. The test for determining the voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession.

> *Commonwealth v. Jones*, 546 Pa. 161, 170, 683 A.2d 1181, 1189 (1996) (citations omitted). 'The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* 'rights.' *Commonwealth v. Bronshtein*, 547 Pa. 460, 464, 691 A.2d 907, 913 (1997) (citation omitted).

> *Commonwealth v. Davis*, 2004 PA Super 409, 861 A.2d 310, 317 (Pa. Super. 2004), *appeal denied*, 582 Pa. 708, 872 A.2d 171 (2005).

> When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession. The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily.

*Commonwealth v. Nester*, 551 Pa. 157, 162-163, 709 A.2d 879, 882 (1998) (citations and footnote omitted).

> When assessing voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Id.* at 164, 709 A.2d at 882 (citations omitted). "The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." Commonwealth v. Templin, 568 Pa. 306, 310, 795 A.2d 959, 961 (2002), citing Nester, supra.

*Commonwealth v. Harrell*, 65 A.3d 420, 433-434 (Pa. Super. 2013)

(footnote omitted), *appeal denied*, 101 A.3d 785 (Pa. 2014).

Here, the court found the following:

> As for [Grant]'s subsequent waiver of his *Miranda* rights after a proper warning, the court concluded at the Suppression Hearing that the warning issued before the second half of the interview

> > distill[ed] and clarify[ied] for [Grant] the scope and nature of his rights and allow[ed] him to stop the interview process, refuse within his rights to make any further statement…. And the waiver seems … to be consistent with all of the things [Grant] had done and his demeanor up to that point.

> (N.T. Suppression, 68: 22-25, 69: 1-7). Although [Grant] raised his health issues and medications in furtherance of the argument that his waiver was not knowing and voluntary, there was no evidence that he was under the influence of any medication or medical condition that would impair his ability to understand his *Miranda* rights or to knowingly, voluntarily, and intelligently waive them. (N.T. Suppression, 64: 3-16, 69: 8-25, 70:1-3).

Trial Court Opinion, 4/9/2013, at 4-5.

We again agree with the trial court's findings. Prior to taking the second statement, Detective Lockhart advised Grant of his **Miranda** rights and the waiver portion of the rights, both verbally and in writing, while at Grant's home. **See** Commonwealth Exhibit 9, Interview, 6/28/2012. Grant acknowledged that he understood his rights and initialed the waiver form. N.T., 3/7/2013, at 13-14. He denied being under the influence of drugs or alcohol. **See** Commonwealth Exhibit 9, Interview, 6/28/2012, at 1. He answered in the negative when asked if any member of the police department had threatened him or promised him anything. **Id.** at 13. Furthermore, when asked how Detective Lockhart and Officer Schott had treated him that day, Grant responded, "Fine." **Id.** As such, the evidence contradicts his subsequent claims of any involuntariness.[6]

Moreover, Grant's reliance on **Seibert**, **supra**, is misplaced as that case was a plurality decision, not binding precedent. **See Commonwealth**

---

[6] Furthermore, any determinations as to credibility of Grant or the officers is left to the trial judge at the suppression hearing and then, subsequently to the jury sitting as the fact-finder, at trial. **See Commonwealth v. Johnson**, 86 A.3d 182, 187 (Pa. 2014) ("If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge.."); (**Commonwealth v. Kearney**, 92 A.3d 51, 65 (Pa. Super. 2014), *appeal denied*, 101 A.3d 102 (Pa. 2014) ("It was the province of the jury as fact-finder to weigh the evidence and believe all, part or none of it. It was also the role of the jury to assess credibility").

*v. Charleston*, 16 A.3d 505, 525 (Pa. Super. 2011) (rejecting an argument that **Seibert** established binding precedent). Moreover, **Seibert** is factually distinguishable from the present matter. In that case, a plurality of the United States Supreme Court concluded that **Miranda** warnings, **intentionally** issued in the middle of the custodial interrogation and **after** a defendant gave an unwarned confession, were ineffective. **Seibert**, 542 U.S. at 612-14. Here, Grant was not subject to a custodial interrogation when he gave the initial statements to Detective Lockhart and there is no indication the detective intentionally sought to withhold the proper **Miranda** warnings prior to Grant giving the statement. Accordingly, Grant's first argument fails.

In his second issue, Grant complains there was insufficient evidence to prove the offenses of IDSI and corruption of minors because the Commonwealth failed to prove the *corpus delecti* beyond a reasonable doubt that was independent of his extrajudicial inculpatory statements. Grant's Brief at 16. Specifically, he points to the following: (1) the four teenagers all gave inconsistent accounts as what occurred on the night of the assault, including whether all four teenagers were present simultaneously in Grant's apartment, the precise point in time when M.P. arrived and the manner of her arrival, and the nature and destination of certain trips taken during the night *via* Grant's car; and (2) there were differences in the testimony of M.M. and M.P. as they related the time frame during which Grant made a

- 13 -

reference to performing cunnilingus on M.M. *Id.* at 16-21. Additionally, he states during the entire interrogation by Detective Lockhart, he did not admit to providing the teenagers with drugs and alcohol, and at trial, he denied performing cunnilingus on M.M. *Id.* at 20-24. Furthermore, he contends the Commonwealth failed to satisfy the *corpus delicti* rule because, absent his inculpatory statement, there was no other evidence proving that a crime had been committed, where there were no eyewitnesses to the act or any physical evidence. *Id.* at 25-27. Moreover, Grant asserts the "closely related crimes exception" to the *corpus delicti* rule does not apply because he did not confess to **all** of the crimes, which is a requirement for the applicability of the exception. *Id.* at 27-34. In other words, he states that since he did not confess to furnishing alcohol to minors, and that was the only offense whose *corpus delicti* was proven by independent evidence, the "closely related crimes exception" does not apply. Grant further states that one cannot not apply the rule to his in-court statements because they were not judicial admissions; rather, he alleges he merely testified that he was "joking" when he made the statements to the victim and was under a form of duress when he speaking with Detective Lockhart. *Id.* at 34.

With respect to the various inconsistencies or other perceived shortcomings regarding the testimony of the four teenagers as well as his own testimony, this argument goes more to the weight of the evidence, relating to credibility, rather than the sufficiency of the evidence.

*Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014).

Grant has not asserted a weight of the evidence claim on appeal. Moreover, "[i]t was the province of the jury as fact-finder to weigh the evidence and believe all, part or none of it. It was also the role of the jury to assess credibility." *Kearney*, 92 A.3d at 65. As such, we decline Grant's "implicit invitation to re-weigh the evidence." *Id.*

Turning to Grant's *corpus delicti* rule argument, we are guided by the following:

> Our standard of review for a challenge to the *corpus delicti* rule is well-settled.
>
> The *corpus delicti* rule is designed to guard against the "hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the

- 15 -

Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Young***, 2006 PA Super 193, 904 A.2d 947, 956 (Pa. Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (Pa. 2006), (quoting ***Commonwealth v. Rivera***, 2003 PA Super 238, 828 A.2d 1094, 1103-04, n.10 (Pa. Super. 2003) *appeal denied*, 577 Pa. 672, 842 A.2d 406 (Pa. 2004)) (internal quotation marks omitted) (emphasis in original).

Additionally,

[t]he *corpus delicti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Herb***, 2004 PA Super 215, 852 A.2d 356, 363 (Pa. Super. 2004) (citations omitted).

***Commonwealth v. Hernandez****,* 39 A.3d 406, 410-411 (Pa. Super. 2012),

*appeal denied*, 63 A.3d 1244 (Pa. 2013).

However, there is a "closely related crimes" exception to the rule:

Where the relationship between the crimes to which the defendant has confessed is close and the policy underlying the *corpus delicti* rule - to avoid convictions for crimes that did not

occur - is not violated, the exception renders the confession admissible for all closely related crimes.

***Commonwealth v. Taylor***, 831 A.2d 587, 596 (Pa. 2003).[7]

Here, the trial court found the following:

> In [Grant]'s case, the Commonwealth established through independent evidence the crime of Furnishing Alcohol to Minors. Because the victim was unconscious from the alcohol provided by [Grant] at the time of the assault, the Furnishing Alcohol to Minors charge related closely to the charges of IDSI and Corruption of Minors. It follows logically that where the Commonwealth charges a defendant with Furnishing Alcohol to Minors and the facts support the claim that the minor became unconscious as a result of consuming the alcohol, and there are further allegations of sexual misconduct with the unconscious minor by the same defendant who furnished the alcohol, the offenses go hand-in-hand. It does not appear to the court that the scenario here offends the rule in Pennsylvania requiring proof of *corpus delicti*. To the contrary, the facts presented in this case appear to fall within the exception carved out by *Taylor* and *Tessel*.

Trial Court Opinion, 4/9/2013, at 6.

We agree with the trial court's well-reasoned analysis. Moreover, Grant's argument, that a defendant must confess to all crimes, including the offense for which the *corpus delicti* was proved by independent evidence, in order for the exception to be applicable, is misplaced. As is evident in ***Taylor***, "where independent evidence establishes the *corpus delicti* **of only**

---

[7] "The purpose behind the *corpus delicti* rule is the ultimate consideration in determining whether two crimes are closely related so as to implicate the exception." ***Taylor***, 831 A.2d at 595-596. It merits mention that in ***Taylor***, the Supreme Court discontinued a "common element" requirement that had been previously articulated in ***Commonwealth v. Verticelli***, 706 A.2d 820 (Pa. 1998). ***See Taylor***, 831 A.2d at 595.

**one of those crimes,** the confession may be admissible as evidence of the commission of the other crime." ***Taylor***, 831 A.2d at 592 (emphasis added). Even though Grant did not confess to all of the crimes, the relationship between the IDSI and furnishing alcohol to minors acts was sufficiently close where the four teenagers testified that Grant provided them with drugs and alcohol at his apartment and the victim stated that she became intoxicated to the point where she and M.P. fell asleep on Grant's bed. Moreover, she testified that when she came to, Grant was over top of her on the bed and when she asked him what he was doing, Grant told her he had committed the act of cunnilingus. N.T., 3/12/2013, at 153-154. M.P. corroborated the victim's testimony, stating that she saw Grant on top of the victim and heard him admit that he had licked the victim's vagina. ***Id.*** at 230-231. Therefore, we conclude the confession and independent evidence presented by the Commonwealth were sufficient in establishing the "closely related crimes" exception and consequently, the *corpus delicti* rule was not violated.[8] Accordingly, Grant's second argument fails.

---

[8] ***See also Tessel***, ***supra*** (concluded that relationship between a theft and a burglary was sufficiently close to allow the court, upon evidence of the *corpus delicti* of the theft, to admit the defendant's confession as evidence that appellant had committed not only the theft but also the burglary where the defendant gave police a statement in which he admitted that he had surreptitiously entered a motel room, removed the television set from that room, and left); ***Commonwealth v. Bardo***, 709 A.2d 871, 874 (Pa. 1998) (held that the confession applied to two crimes, where the defendant confessed to strangling his three-year-old niece to death while he was
*(Footnote Continued Next Page)*

- 18 -

With respect to Grant's final claim, he argues the court erred in refusing to include Pennsylvania Suggested Standard Jury Instruction 3.04(D) (Criminal) in its instructions to the jury on voluntariness and by refusing to let defense counsel incorporate the points of law contained in that instruction in his closing argument. Grant's Brief at 44. He relies on *Commonwealth v. Motley*, 372 A.2d 764 (Pa. 1977), for the principle that it was essential for the jury to be instructed to consider the absence of *Miranda* warnings in assessing the voluntariness of his extrajudicial admissions. Grant's Brief at 48. He also states that *Commonwealth v. Baker*, *supra*, does not apply to the present matter because it constitutes *dicta* and is contrary to *Motley*.

Our standard of review for a trial court's instructions to the jury is well established.

> When reviewing a challenge to a part of a jury instruction, the Court must review the jury charge as a whole to determine if it is fair and complete. A trial court has broad discretion in phrasing its charge and can choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Collins*, 810 A.2d 698, 700 (Pa. Super. 2002).

*(Footnote Continued)* ————————

sexually molested her but the Commonwealth did not present independent evidence of aggravated indecent assault before introducing the defendant's confession because "the relationship between the two crimes [was] close and the policy underlying the *corpus delicti* rule ha[d] not been violated."), *cert. denied*, 525 U.S. 936 (1998).

Instruction 3.04D of the Pennsylvania Suggested Standard Criminal Jury Instructions provides:

> CONFESSION OR ADMISSION: VOLUNTARINESS--PROOF; *MIRANDA*
>
> 1. In determining voluntariness you should also consider whether there was any violation of the U.S. Supreme Court case of *Miranda v. Arizona*. *Miranda* requires that the police, before questioning a suspect in custody, give him or her the *Miranda* warning. The essence of the warning is that a suspect has a right to remain silent, that anything he or she says can be used against him or her; and that he or she has a right to the advice and presence of his or her own or a free attorney. The police are not to question a suspect unless he or she understands the warning and knowingly, intelligently, freely, and voluntarily gives up his or her rights to silence and an attorney.
>
> 2. Whether or not there was a violation of *Miranda* requirements may be an important factor for you in determining whether a standard meets the basic test of voluntariness. The importance of any *Miranda* violation depends upon the nature, seriousness, and reasons for the violation and whether it affected the defendant at the time [he] [she] made the statement.

Pa. SSJI (Crim) 3.04D.

Here, the court noted it did not give instruction 3.04D, but it did give Pennsylvania Suggested Standard Criminal Jury Instructions 3.01, 3.01A, 3.04A, 3.04B, 3.04C, and 3.05. **See** Trial Court Opinion, 4/9/2013, at 7; **see also** N.T. 3/13/2013, at 448-451. The court stated it "provided these instructions to ensure that the jury was properly instructed in the law and that voluntariness was addressed in accordance with the proper legal standards[.]" Trial Court Opinion, 4/9/2013, at 8. We agree with the court's rationale.

- 20 -

Moreover, we find Grant's reliance on **Motley** is misplaced. In **Motley**, on the day following the defendant's arrest, prior to his arraignment, he made a detailed statement to the police implicating himself in a robbery and murder. His statement "constituted the heart of the Commonwealth's case" against him as there was no independent evidence linking him to the crime. **Motley**, 372 A.2d at 767. "[F]ollowing his arrest, and throughout his lengthy interrogation, he was never advised of his constitutional right to remain silent and of his right to retained or appointed counsel." **Id.** The trial court refused his request "that the jury be instructed that the failure of the police to advise him of these rights was a 'significant factor' in determining whether the statement was voluntary." **Id.** (footnote omitted). The Pennsylvania Supreme Court reversed, concluding the defendant "was entitled to an appropriate instruction informing the jury that the absence of warnings or advice as to his constitutional rights was a relevant factor in determining the voluntariness of his admissions." **Id.** at 767. **Motley** is factually distinguishable from the present matter because, as we stated before, Grant was not placed in a custodial detention or arrest when he gave the pre-**Miranda** statement to Detective Lockhart.

In **Baker**, **supra**, the defendant challenged the same issue with respect to the court's refusal to give instruction 3.04D. A panel of this Court found that the defendant technically waived the issue because he did not object subsequently to the instructions given to the jury. **Baker**, 24 A.3d at

1024. Nevertheless, the panel determined the trial court's instructions were appropriate, and that the refusal to give instruction 3.04D was not in error because the trial court had ruled the defendant's statement did not require suppression due to the fact that he was not in custody, requiring **Miranda** warnings. Therefore, the panel stated the defendant could not present evidence at trial challenging the **admissibility** of the statements he made to police but he could raise the issue of the **voluntariness** of the statements to the jury. Id. at 1024-1025. This Court concluded:

> Having raised the issue of the voluntariness of his statements, [the defendant] was entitled to jury instructions on that issue, and, in fact, received such instructions. Because those instructions given, as a whole, "clearly, adequately, and accurately" presented the law to the jury for its consideration, we find no abuse of discretion or error of law[.]

*Id.* at 1025.

Although the discussion in **Baker** may technically be *dicta* based on waiver, we find the reasoning persuasive and reject Grant's argument. In accordance with **Baker**, Grant cannot challenge the admissibility of his statements to police because the trial court denied his request to suppress them, but he was permitted to challenge the voluntariness of those statements, which he did through cross-examination of Detective Lockhart and his own testimony. Moreover, a review of the court's instructions reveals that as a whole, they "'clearly, adequately, and accurately" presented the law to the jury for its consideration[.]" **Baker**, 24 A.3d

at1025.  As such, we find no abuse of discretion or error of law on the part of the trial court.  Accordingly, Grant's third and final claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2015